### FAIRFAX GAS & SUPPLY CO. v. HADARY.

#### No. 5402.

Circuit Court of Appeals, Fourth Circuit.

Nov. 6, 1945.

940

Cornelius H. Doherty, of Washington, D. C., for appellant.

Woodrow E. Faulkner, of Washington, D. C. (T. Brooke Howard, of Alexandria, Va., on the brief), for appellee.

Before DOBIE and NORTHCOTT, Circuit Judges, and HAYES, District Judge.

DOBIE, Circuit Judge.

This is an appeal by the Fairfax Gas and Supply Company, a corporation (hereinafter called Fairfax), from a judgment of the United States District Court for the Eastern District of Virginia. The judgment, against Fairfax and in favor of Gideon Hadary, was for $750, based on the verdict of a jury, for personal injuries received by Hadary as the direct result of Fairfax's negligence.

Hadary rented a home in Fairhaven, Virginia. In this home were equipment and appliances suited only for the type of gas supplied in cylinders to its patrons by Fairfax. Hadary, on October 5, 1944, entered into a contract with Fairfax for the supply of this gas and Fairfax was duly informed by Hadary that he would move into the home on October 8, and would then use the equipment and the gas. Upon Hadary's coming to the home on October 8, he found on the door a note from Fairfax reading: "To start gas, turn valve on top of cylinder."

There was the clear evidence of Frum, agent of Fairfax, that he knew of a definite leakage of gas in the home to be occupied by Hadary, and that he took no steps either to have the leakage repaired or to inform Hadary thereof. On the contrary, in spite of Frum's knowledge of the leak and the ignorance of Hadary thereof, Frum left the note instructing Hadary how the flow of gas could be started. When Hadary lit the gas stove in the kitchen and struck a match to light the hot-water heater, an explosion immediately took place which caused the personal injuries sustained by Hadary.

On this evidence, upon proper instructions from the trial judge, the jury returned a verdict in favor of Hadary and fixed his damages at $750. Judgment was duly entered on the verdict. To us it is crystal clear that the evidence was ample to sustain the verdict and judgment.

This brings us to what we consider the only serious question in the case. The service contract entered into by Fairfax and Hadary contained the following clause:

"13. Company shall not be liable for property or personal injury resulting from leakage, fire, explosion, or from any other cause whatsoever."

In spite of its broad terms, this contract, we think, constitutes no valid defense to Fairfax.

The law seems well settled that a common carrier, owing a duty to serve all proper persons who apply, cannot, when acting in its public capacity, validly exempt itself by contract from liability for negligence. See Dobie on Bailments and Carriers, § 130; New York Central Railroad Co. v. Lockwood, 17 Wall. 357, 21 L.Ed. 627; Santa Fe, etc., Railway Co. v. Grant Brothers Construction Co., 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787. The same rule, it seems, applies to innkeepers. Beale, Innkeepers, § 211; Schouler on Bailments, 2d Ed. § 309; Dobie on Bailments and Carriers, § 98. And the cases tend to deny this power to public utilities in general, which are affected with a public interest.

The cases vary widely as to the power of a purely private contractor to stipulate by contract against liability for negligence. All the cases seem to agree that such stipulations are not favored and are always to be strictly construed. In 17 C.J.S., Contracts, § 262, p. 645, it is stated:

"The rule against such contracts is frequently limited to the principle that parties cannot stipulate for protection against liability for negligence in the performance of a legal duty or a duty of public service, or where a public interest is involved or a public duty owed, or, when the duty owed is a private one, where public interest requires the performance thereof, or where the party to whom the private duty is owed is compelled to submit to such stipulation for exemption."

While in 12 Am.Jur. 684, we find: "An analysis of the decisions indicates that even under the view that a person may, under some circumstances, contract against the performance of such duties, he cannot do so where the interest of the public requires the performance thereof or where, because the parties do not stand on a footing of equality, the weaker party is compelled to submit to the stipulation."

In 6 Williston on Contracts § 1751C (Revised Ed.), it is stated:

"There are three bases for deciding that a bargain, otherwise valid, which exempts one from future liability to another that would arise except for the bargain is invalid because the parties are in a certain relationship to each other. First, some relationships are such that once entered upon they involve a status requiring of one party greater responsibility than that required of the ordinary person, and, therefore, a provision avoiding liability is peculiarly obnoxious. Second, in many relationships there is a situation where one person is dealing contemporaneously with several others, so that a bargain limiting his liability to one of them is considered to have a tendency to lead to conduct injurious to others. Third, a relation often represents a situation in which the parties have not equal bargaining power; and one of them must either accept what is offered or be deprived of the advantages of the relation. These reasons are not necessarily exclusive of one another.

"Though the relationship of landlord and tenant is such that its incidents have been regulated by statute to some extent, it is clear that apart from statute a landlord may at common law exempt himself from liability for negligence. But courts are disposed to interpret strictly clauses in leases providing for immunity for negligence so that they shall not be effective to discharge liability for the consequences of negligence in making or failing to make repairs * * *.

"In general, however, wherever there is a relationship involving public service, a bargain exempting the public utility from its duties as such is invalid. Particular applications and limitations of this principle have been noted previously with respect to railways, air transportation, and telegraph companies. The principle has also been applied to municipalities while performing duties of public service, telephone companies, public docks, irrigation districts, and even companies manufacturing elevators. A similar principle is applied to statutory valued fire insurance policies. Although there is nothing in the ordinary personal relationship of bailor and bailee for hire which puts the parties on such an unequal footing that they cannot by contract limit the amount of the bailee's liability for loss or damage respecting the bailment, bailees rendering duties of public service, such as warehousemen, garage-keepers, parking-space proprietors, and airports, may not by contract relieve themselves of their common-law duty of due care. Similarly, an innkeeper may not by contract exempt himself from liability for negligence in keeping the goods of his guest, though he may limit his absolute liability.

"Where harm is caused through activity which is outside the scope of the public utility's duty of public service, a contract relieving it of liability is valid. Thus, in a lease of its property, or in a special contract for carriage, a railroad may by contract become exempt from liability for negligence."

And in 2 Restatement of Contracts, American Law Institute, § 575, we find:

"(1) A bargain for exemption from liability for the consequences of a wilful breach of duty is illegal, and a bargain for exemption from liability for the consequences of negligence is illegal if

"(a) the parties are employer and employee and the bargain relates to negligent injury of the employee in the course of the employment, or

"(b) one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation."

The instant case, somewhat in the nature of a tertium quid, appears not to fall squarely within either of these two categories: the contractor affected with a public interest, the purely private contractor. Hadary here unquestionably acted under at least a quasi economic and domestic compulsion. Only from Fairfax could he secure the type of gas that could be used in the appliances and equipment located in the home he had rented. Of this situation Fairfax was, of course, completely aware.

Again we have here no mere case of what has been called negative negligence.

Fairfax, a dealer in gas, universally known as a highly dangerous substance, had definite knowledge of the leak in the home rented by Hadary, with all the hazards and perils thereunto appertaining. Of all this Hadary was ignorant. Yet Fairfax put a note (with no mention of this known hazard) on the door of this home, specifically instructing Hadary how to turn on the gas. Certainly, under all these circumstances, this at least amounted to an assurance by Fairfax that, as far as its knowledge extended, the use of the gas was not fraught with danger.

Even then if it be the rule that a purely private contractor may by contract generally relieve itself of liability for mere negligence, such a rule, we think, should have no application· to the facts of the instant case. To us, the conduct of Fairfax may certainly be called gross negligence; perhaps we may go further and state that it closely verges on, if it does not actually attain, the quality of wantonness. Our social conscience is shocked at the idea that Fairfax should be here permitted to hide behind the beneficent shield of contract. Common humanity would seem to require, contract or no contract, that Hadary should be apprised by Fairfax of what it knew was a danger, both real and imminent.

The judgment of the District Court is affirmed.

Affirmed.