## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### SOUTHERN RAILWAY COMPANY

### v.

### ARLEN REALTY AND DEVELOPMENT CORP.

August 30, 1979.

Record No. 771516.

Present: All the Justices.

H. Merrill Pasco (*William F. Stone, Jr.; Hunton & Williams, Stone, Joyce, Worthy & Stone*, on briefs), for appellant.

*Charles E. Carter* (*Carter, Craig & Bass*, on brief), for appellee.

HARMAN, J., delivered the opinion of the Court.

This is an appeal from a judgment of the trial court denying Southern Railway Company (Southern or the railroad) indemnification from Arlen Realty and Development Corp. (Arlen or the indemnitor) for attorney's fees and other expenses of litigation. The trial court, sitting without a jury, held that the indemnity provision in a "Trailer Use Agreement" between Southern and Arlen was effective and that reasonable attorney's fees and expenses incurred in defense of a tort claim were within the scope of that provision. The court, however, denied recovery for these items because Southern made no demand upon Arlen that it take over and assume defense of the tort action at the time it was first instituted.

Southern contends that the trial court, under the facts disclosed by the record, erred in denying indemnification. Arlen, by its assignments of cross-error, challenges the court's ruling that the agreement was effective and it further argues that the agreement, even if effective, did not provide for indemnification of attorney's fees and expenses of litigation incurred in defending the tort claim. Arlen also contends that the trial court erred in not sustaining its plea of release.[1]

Commencing in 1969, Southern, as a part of its operation in Danville, leased "piggyback" trailers to Arlen. In 1972 approximately 1300 trailer leases were entered into between Southern and Arlen. In each instance a "Trailer Use Agreement", on the form provided by the railroad, was signed by Arlen's driver and Arlen received a copy of the agreement. Arlen often picked up trailers before Southern's office opened in the morning. Testimony in the record discloses that approximately 90% of the Trailer Use Agreements were not executed until sometime after the trailers were picked up by Arlen.

---

[1] At bar, citing *Southern States* v. *N. & W. Railway*, 219 Va. 191, 247 S.E.2d 461 (1978), and *Richardson-Wayland* v. *VEPCO*, 219 Va. 198, 247 S.E.2d 465 (1978), Arlen argued that the indemnity provision of the agreement was void as contrary to public policy. This issue was not raised by Arlen's assignments of cross-error and will not be noticed here. Rule 5:21.

On May 23, 1972, one of Arlen's employees, Blaine, drove a tractor belonging to Arlen to Southern's yard. Upon arriving there, Blaine coupled his tractor to one of Southern's trailers and towed the trailer to a rail siding. After positioning the trailer so it could be used to unload a box car, Blaine uncoupled his tractor and drove away. When the unloading was completed, Blaine returned to pick up the trailer. As Blaine was recoupling his tractor to the trailer, the trailer moved back against the box car and injured Martin, another Arlen employee.

The Trailer Use Agreement covering the trailer which injured Martin was signed after the accident, either on May 23 or May 24, when the trailer was returned to Southern. The indemnity provision of the agreement provides as follows:

> "Except for normal wear and tear to the equipment covered by this agreement, the User [Arlen] hereby agrees to, and does release, indemnify, protect and save harmless the railroad from and against all claims, damages, expenses and liability (whether or not such liability has been judicially determined) for death, personal injury, or property damage (including, but not limited to, any damage that may occur to the said equipment, or to the lading therein) which occurs while said equipment is in the possession of the User, whether or not negligence on the part of the railroad may have caused or contributed to said death, personal injury, or property damage. In the event of loss, theft or irreparable damage to said equipment while in the possession of the User, the User agrees to reimburse the railroad an amount equal to the market value of said equipment on the date of such loss, theft, or irreparable damage, but in no event shall the amount of such reimbursement be less than the depreciated book value of said equipment."

Martin subsequently brought a tort action against Southern alleging that he was injured as the result of defective maintenance of the trailer brakes. Southern promptly filed its responsive pleadings and grounds of defense. It also filed, under Rule 3:10, a third-party action against Arlen seeking reimbursement under the indemnity provision for any sums recovered by Martin and for any expenses and attorney's fees which Southern might incur in defending Martin's action.

In its responsive pleading and grounds of defense to the third-party action, Arlen denied that it had entered into an agreement with Southern. It also denied that the agreement contained an indemnity provision as alleged by Southern.

Upon Arlen's motion, trial of Southern's third-party action against

Arlen was severed from the trial of Martin's tort claim. Martin's case proceeded to trial with Southern's attorneys conducting the defense. While the trial was in progress, Arlen's attorneys, who were present but not participating in the defense, negotiated a settlement of Martin's claim. Southern did not contribute to the settlement.

The final order dismissed Martin's case against Southern "with prejudice". Southern's third-party claim against Arlen was dismissed "without prejudice".

The present action was instituted when Arlen refused the railroad's demand for reimbursement of its attorney's fees and expenses in defending the Martin case. In addition to generally denying liability in its grounds of defense, Arlen filed a demurrer, a special plea of release, and a plea of the statute of limitations.

The trial court overruled and denied the demurrer and statute of limitations plea. After an *ore tenus* hearing, the court held, as noted earlier, that the indemnity provision was effective and that reasonable attorney's fees and expenses incurred in defense of the tort claim were within the scope of that provision, but recovery was denied to Southern because the railroad made no demand that Arlen undertake and assume defense of the tort action at the time it was first instituted.

We first address the issue raised by Southern's single assignment of error, *i.e.,* whether Southern's right to indemnity under the agreement is dependent upon notice and tender of defense of the tort action to Arlen and whether attorney's fees and expenses of litigation are recoverable under the indemnity provision in question. In considering these issues it is well to keep in mind that the railroad's right to indemnity here arises from an express contract rather than a contract implied in law.

These appear to be issues of first impression in Virginia. The parties have cited no Virginia case directly on point, and our own research has revealed none.

No notice of the tort action or tender of the defense of the case was required by the terms of the indemnity provision. Thus, the trial court's holding that this was necessary must have been based upon the notion that it was required by the general law of indemnification.

The general rule is that, in an action by an indemnitee against his indemnitor, a judgment entered in favor of a third party against the indemnitee is not conclusive upon the indemnitor unless the indemnitee gave the indemnitor notice of and an opportunity to defend the prior suit. Annot., 73 A.L.R.2d 504, 506 (1960); 41 Am. Jur.2d *Indemnity* § 40 (1968); 41 C.J.S. *Indemnity* § 32a(2) (1944). This is merely a *procedural* rule; it does not affect the indemnitee's *substantive*

contract rights against his indemnitor. Unless the contract of indemnity provides otherwise, the indemnitee's failure to give the indemnitor timely notice of and an opportunity to defend against the third party's claim does not bar recovery by the indemnitee against the indemnitor. Such failure only prevents the indemnitee from using the third party's judgment as *conclusive* evidence of his liability to the third party and of the damages arising therefrom. Arlen's contract with Southern did not make notice of and an opportunity to defend against Martin's action a condition precedent to Southern's right to indemnity; thus, any failure by Southern to timely notify Arlen could not preclude that right.[2]

▪ Further review of the treatises reveals that where, as here, the right of the indemnitee is based upon an express contract, and no provision of the contract provides otherwise, the rule followed in the great majority of other jurisdictions is that the indemnitee may recover reasonable attorney's fees and expenses of litigation spent in defense of the claim indemnified against.

This rule is stated in 42 C.J.S. *Indemnity* § 13d (1944) as follows:

"As a general rule an indemnitee is entitled to recover, as a part of the damages, reasonable attorney's fees, and reasonable and proper legal costs and expenses, which he is compelled to pay as a result of suits by or against him in reference to the matter against which he is indemnified, provided that under all the circumstances of the case he acts in good faith and with due diligence in prosecuting or defending such suits. This rule is especially applicable where the indemnitor is notified and given an opportunity to contest the adverse litigation but fails or refuses to do so; or where the employment of counsel is with the knowledge of the indemnitor. . . ." (footnotes omitted)

Likewise, this principle is recognized in 41 Am.Jur.2d *Indemnity* § 36 (1968), which sets forth the following statement of the rule:

"As a general rule, and unless the indemnity contract provides otherwise, an indemnitee is entitled to recover, as part of the damages, reasonable attorneys' fees, although there is some au-

---

[2] The procedural rule concerning the effect of a third party's *judgment* against an indemnitee could not apply to this case because there was no judgment against Southern in Martin's action. Also, in an action against his indemnitor, an indemnitee could not use a third party's judgment to prove legal expenses incurred in the earlier litigation unless such expenses were adjudicated there.

thority to the contrary. The allowance of attorneys' fees is limited to the defense of the claim indemnified against and does not extend to services rendered in establishing the right of indemnity. An indemnitee's insurer defending an action against an indemnitee has also been permitted to recover costs and attorneys' fees from the indemnitor. And one who is entitled to indemnity, including indemnity against counsel fees, is entitled to indemnification for counsel fees even though counsel appearing for the indemnitee was furnished by his insurance carrier. . . ." (footnotes omitted)

Adopting the principles set forth above and applying them to the case at bar, we hold that the trial court was correct in holding that attorney's fees and expenses of litigation were recoverable by the railroad under the contractual indemnity provision. However, we also hold that the court erred in denying Southern recovery for those items on the ground that Southern failed to notify Arlen of the tort action and demand that Arlen take over and assume defense of that action.[3]

■ We will now address the other issues raised by Arlen's assignments of cross-error. Here, as before the trial court, Arlen argues it was not bound by the agreement because it was not executed until sometime after Martin was injured. Arlen also argues that no "authorized representative" of Arlen ever agreed or assented to the indemnity provision contained in the printed form.

We find these arguments to be without merit, for as the trial court pointed out in its letter opinion:

"[T]he Court finds that even though the Trailer Use Agreement was actually signed after the accident that gave birth to this litigation, that this fact was not unusual, that on many occasions for the convenience of all parties, that the Trailer Use Agreements were signed after the trailers had been picked up and returned. It was the habit and practice of both Southern and [Arlen] to conduct their business in this manner and was a course of conduct and business practice that both parties, by their past dealings, had approved."

This finding that the parties, by their course of dealings, had assented to and adopted the terms of the printed form as their agreement in the instant case is fully supported by the uncontradicted evidence showing that the same forms were employed in hundreds of transac-

---

[3] Since Southern has not effectively raised the issue, we do not decide whether Southern's making Arlen a third-party defendant constituted notice of and an opportunity to defend against Martin's action.

tions between the parties over a period of several years preceding Martin's injury.

Arlen's final argument is that the trial court erred in not holding that there had been a waiver or release of Southern's right to indemnity during the negotiations which resulted in settlement of the Martin claim. Because of its ruling on the questions of notice and tender, the trial court found it unnecessary to decide this issue upon which the evidence was sharply conflicting. Because of our ruling that attorney's fees and expenses of litigation are recoverable by Southern under the indemnity provision, this question is now a crucial one which can be properly decided only by the trial court.

For these reasons we will reverse the judgment below and the case will be remanded to the trial court for a determination of the release question and for such further proceedings as may be necessary in accordance with this opinion.

*Reversed and remanded.*