Marvin L. RICHARDSON, Plaintiff,

v.

ECONO–TRAVEL MOTOR HOTEL COR-
PORATION, et al., Defendants,

and

ECONO–TRAVEL MOTOR HOTEL
CORP., Cross-Claimant,

v.

LARK INVESTMENT COMPANY, A.
Lewis Allen, t/a Lark Investment Com-
pany & Allen Management, Inc., Cross-
Defendants.

Civ. A. No. 82–0280–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 21, 1982.

Alfred S. Bryant, William G. Ellyson,
Richmond, Va., for plaintiff.

Joseph D. Roberts, Arlington, Va., for
Econo-Travel Motor Hotel Corp.

Anthony E. Grimaldi, Fairfax, Va., for
Lark Inv. Co., A. Lewis Allen and Allen
Management, Inc.

Benjamin J. Trichilo, Fairfax, Va., for A.
Lewis Allen.

MEMORANDUM OPINION

CACHERIS, District Judge.

I

This court is asked to interpret the indemnity provisions of a franchise agreement. The issue arises out of the lawsuit brought by Marvin Richardson against Econo-Travel Motor Hotel Corp., and its licensee, Lark Investment Co.

Richardson registered at the Econo-Travel Motor Hotel in Woodbridge, Virginia, in March, 1981. He was assaulted by unidentified assailants during his stay at the hotel. Richardson charged Econo and Lark with negligence, breach of implied warranty, and breach of statutory duty.[1] Econo filed a crossclaim against Lark seeking indemnification for any amounts adjudged against Econo as a result of the lawsuit. The crossclaim was based on indemnity provisions of the License Agreement between Econo and Lark dated April 4, 1976. Interpretation of the indemnity provisions must be governed by the laws of Virginia.[2] Econo filed a motion for summary judgment on the crossclaim. On September 3, 1982, counsel agreed to sever the crossclaim from the main case and that the issue raised in the crossclaim would be decided by the court. For reasons which follow, this court finds that judgment should be entered in Econo's favor.

On September 9, 1982, Econo and Richardson entered into a Covenant-Not-to-Sue. The covenant required Econo to pay Richardson $17,500.00 and in return, Econo was dismissed with prejudice as a defendant in the lawsuit. The jury, in the trial of the remaining defendants, returned a general verdict awarding Richardson compensatory damages in the amount of $450,000.00.

The indemnity clauses of the license agreement are paragraphs 17, titled "Insurance and Indemnity" and 29, titled "Relationship."

Paragraph 17:

[L]icensee shall indemnify Company and save it harmless from and against any and all claims for damage to persons or property arising from, out of or relating to any occurrence on the Premises. Licensee shall pay all costs, expenses, and reasonable attorney's fees incurred by Company in connection with such claims.

Paragraph 29:

[L]icensee shall indemnify and save Company harmless from and against any and all claims, demands, costs and expenses arising from, out of or in any way relating to the operation of Licensee's Econo-Travel Motor Hotel; Company shall be entitled to such indemnification in addition to any agreed and liquidated damages pursuant to Article 22 above.

Econo and Lark agree that the License Agreement was in effect at the time of the assault on Richardson. Econo claims it is entitled to indemnification from Lark for the $17,500.00 paid to Richardson and the costs and attorney's fees incurred in defending the Richardson lawsuit. Lark denies any liability to Econo for this money, arguing the language of the indemnity clauses was not intended to cover all situations and particularly not the situation presented in the Richardson lawsuit.

II

Lark characterizes the issue in terms of Econo's negligence: "Whether under Virginia law a general indemnity extends to the negligent, intentional, or reckless omissions of the indemnitee." Lark asks the court to consider *National Motels, Inc. v. Howard Johnson, Inc. of Washington,* 373 F.2d 375 (4th Cir.1967) in support of its argument that it is relieved from liability because of the allegations of Econo's negligence in the Richardson complaint. In the *National* case Howard Johnson had agreed to indemnify National from any and all loss,

1. Va.Code § 35–10.

2. License Agreement, Paragraph 27—"Governing Law: This agreement shall be governed by

and construed in accordance with the laws of the Commonwealth of Virginia."

damage or liability incurred by the lessee. Another clause in the agreement required the lessor to repair or rebuild the leased premises if they were destroyed or damaged. Initially, the District Court found Howard Johnson was not liable for its own negligent acts because the lessor was required to rebuild or repair the premises. Upon reconsideration, the court decided that Howard Johnson was partially liable. When the case was reviewed by the Fourth Circuit, the court said:

[I]t is apparently not against the public policy of Virginia for one to contract against his own negligence in some situations. But neither is there a strong policy supporting such agreements to the extent that they should be read into a contract which shows no ambiguity on its face. (citations omitted) (footnote omitted) *Id.* at 379.

The facts in *National* are readily distinguishable from the facts in this case. The major difference is that the indemnitee, Howard Johnson, was found negligent. Econo has not been found negligent. Another difference between the two cases is that court said Howard Johnson's conduct "approached recklessness".[3] Lark has stated that at the time Lark and Econo signed their agreement, they were unaware that any highly dangerous conditions were included in the "subject matter" of their relationship. There has been no showing of any reckless acts on the part of Econo.

In addition, Lark relies upon *Daniel Construction Co. v. Welch Contracting Corp.,* 335 F.Supp. 303 (E.D.Va.1971). It is true that the opinion mentions the Virginia rule that indemnity agreements are to be strictly interpreted. However, if the opinion is read in its entirety, it is clear that *Daniel* was not a case where the party seeking indemnity was unaware of a situation or, "even simply allowed such work to be done." In fact, it was a situation in which the indemnitee had actual direction and

control of the occurrences that led to the lawsuit.

Lark also cites *Fairfax Gas & Supply Co. v. Hadary,* 151 F.2d 939 (4th Cir.1945). Fairfax, a dealer in highly dangerous gas, had knowledge of a gas leak in Hadary's home, failed to tell him about the leak and left instructions for him to turn on the gas. When he tried to do so, there was an explosion and he was injured. In its opinion, the court observed that although courts vary in their decisions about the power of a private contractor to contract "against liability for negligence", courts seem to agree that these contracts are not favored and they must be strictly construed. Once again, it must be made clear that this is another case that is clearly distinguishable from the Econo/Lark situation. The court in *Fairfax* said: "Again we have here no mere case of what has been called negative negligence." The court characterized the conduct of Fairfax as grossly negligent and stated that it "closely verges on, if it does not actually attain, the quality of wantonness." *Id.* at 941, 942.

### III

Econo challenges Lark's public policy defense with *Chesapeake & O. Ry. v. Clifton Forge-Waynesboro Tel. Co.,* 216 Va. 858, 224 S.E.2d 317 (1976). Econo considers the language of the indemnity clause in that case, which is similar to the clauses in issue here, as pertinent to their argument. The court found that even though a common carrier, acting in that capacity, cannot validly contract to be exempted from liability for negligence, it may do so when not acting in that capacity. Of more importance to this case is the reason for the decision in *Chesapeake.* The court said, "[e]ach was free to make or refuse to make the contract and to bargain 'at arms length' over terms and conditions." 224 S.E.2d at 322. Econo and Lark had the same freedom. The

---

**3.** 373 F.2d at 380. The *National* case involved the use of highly explosive and dangerous liquid gas. Because of this and Howard Johnson's knowledge that the equipment was not working properly, the court said, "we think

Howard Johnson's action in sending a busboy with only minimal instructions to ignite the heating system approached recklessness." The Richardson trial court granted Lark's motion to dismiss the punitive damages claim.

agreement was negotiated by representatives of both parties.[4] Both Econo and Lark are conversant with the hotel business. Each party was capable of protecting its own interests at the time the agreement was made. Lark was under no compulsion to accept the contract. This type of franchise agreement is standard in the hotel business and contains typical provisions.

The burden of proving there are no material facts in dispute is on the moving party. Econo has met this burden. Richardson was injured on Lark's premises, the lease agreement was in effect at the time of the injury and the only question is the interpretation of the language of the indemnity clauses. Therefore, this court is now called upon to determine what was meant by the terms of the agreement at the time it was executed and accepted by both parties.

## IV

■ Econo and Lark lawfully contracted. Their agreement states their intention at the time it was executed. The language is clear and unambiguous. Agreements are not necessarily ambiguous because the parties disagree as to the meaning of the language of the agreement.[5] In considering the purpose of the indemnity clauses, it is clear they were meant to safeguard Econo from liability for the type of events or occurrences found in the underlying lawsuit. Physical conditions of the Woodbridge hotel were under the day-to-day control of Lark.[6] It follows that the parties intended Lark to be responsible for any claims that might arise as a result of physical conditions at the hotel.

4. Supplement to License Agreement for the operation of an Econo-Travel Motor Hotel, April 4, 1976. The relevant clause states: "WHEREAS, the terms of the New License Agreement and this Supplement were negotiated by representatives of the Company and of the Econo-Travel Franchisee Association, Inc. (a non-stock corporation representing substantially all Econo-Travel Licensees)...."

5. *Southern Constr. Co. v. United States,* 364 F.2d 439, 453 (Ct.Cl.1966).

## V

■ In *Wallenius Bremen G.m.b.H. v. United States,* 409 F.2d 994, 998 (4th Cir. 1969), the Fourth Circuit said, "[I]ndemnity in the law of torts is, of course, the name given to the determination of primary and secondary liability." Indemnity shifts the entire loss from the person whose fault is passive to the person who has agreed to bear it or who is primarily liable. In *United States Lines, Inc. v. Newport News Shipbuilding & Dry Dock Co.,* 688 F.2d 236, at 240–241 (4th Cir.1982), the Fourth Circuit recognized the lack of consistency in determining indemnity issues under the "active-passive standard". In so doing, the court relied on the opinion in *White v. Johns-Manville Corp.,* 662 F.2d 243, 249 (4th Cir. 1981), which noted that the distinction between primary and secondary liability:

> [I]s not based on a mere difference in *degrees* of fault but rather, on a 'difference in the *character* or *kind* of wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person.' Where the indemnitee's liability is merely constructive, vicarious or derivative, the burden for the entire loss may be shifted to the indemnitor whose actual fault caused the injury. (citation omitted) (quoting *Builders Supply Co. v. McCabe,* 336 Pa. 322, 77 A.2d 368, 370 (1951)).

The actual fault of Lark has been determined. Lark did not request a special verdict to determine if Econo was negligent or to determine its liability under Richardson's theories. This court finds Econo is entitled to indemnification under the terms of the Lease Agreement.

6. There is mention of Paragraph four of the agreement titled, "Construction of a Motor Hotel." Lark contends that this establishes Econo's negligence because Econo furnished the design plans. However, part B expressly states that, "If this license is for more than 48 units then Licensee shall submit modifications of the standard plans and specifications to Company for prior approval, which approval shall not be reasonably (sic) withheld." The Woodbridge hotel has 60 units. There is nothing in the pleadings to show that Lark requested any changes in design.

## VI

Although Lark does not contest the reasonableness of the settlement, this court feels it is appropriate, at this juncture, to address this point. *Moses-Ecco Co. v. Roscoe-Ajax Corp.,* 320 F.2d 685, 689 (D.C.Cir. 1963), considers the issue of indemnity with regard to settlement by the indemnitee. Citing Justice Holmes' statement, "a sum paid in the prudent settlement of a suit is paid under the compulsion of the suit as truly as if it were paid upon execution,"[7] the court only considered whether the indemnitee had been reasonable and prudent in settling, not the issue of the indemnitee's negligence. Public policy supports settlement of disputes. In *Premier Corp. v. Economic Research Analysts,* 578 F.2d 551, 554 (4th Cir.1978), the court discussing an indemnity clause similar to the one in the present case, stated, "Premier's payment without the compulsion of a judgment affords the broker no defense. It simply places on Premier the burden of showing that the settlement was reasonable."

The jury awarded damages to the plaintiff, against Lark, in the amount of $450,-000.00. Econo settled with the plaintiff for $17,500.00. Lark itself asserts that Econo settled with Richardson due to Richardson's allegations of Econo's liability. In view of the amount awarded against Lark on the basis of similar allegations, $17,500.00 is a reasonable amount paid in settlement.

## VII

Finally, this court must decide if Econo is entitled to the attorney's fees expended defending the Richardson lawsuit. In *Southern Ry. v. Arlen Realty & Dev. Corp.,* 220 Va. 291, 257 S.E.2d 841 (1979), the Supreme Court of Virginia discussed awarding attorney's fees in indemnity cases. When indemnity arises through an express contract, the majority rule is the indemnitee may recover attorney's fees and expenses spent in the defense of the indemnified claim. The clear language of the

indemnity clauses in Econo/Lark agreement allows recovery for the attorney's fees and expenses in connection with any claim. Therefore, Econo is entitled to the attorney's fees and expenses incurred in defending the Richardson lawsuit.

An Order, consistent with this Opinion, shall be entered this date.

---

7. *St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co.,* 201 U.S. 173, 182, 26 S.Ct. 400, 403, 50 L.Ed. 712 (1906).