**CHICAGO & NORTH WESTERN TRANSPORTATION COMPANY, a corporation, Appellant,**

**v.**

**EMMET FERTILIZER & GRAIN CO., a corporation, Appellee.**

**No. 87–2029.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1988.

Decided July 25, 1988.

John H. Cotton, Omaha, Neb., for appellant.

Theodore J. Stouffer, Omaha, Neb., for appellee.

Before ARNOLD, Circuit Judge, TIMBERS,* Senior Circuit Judge, and WOLLMAN, Circuit Judge.

ARNOLD, Circuit Judge.

Chicago and North Western Transportation Co. (C & NW) brings this diversity suit against Emmet Fertilizer & Grain Co. for indemnification for a substantial tort settlement that C & NW paid to one of Emmet's employees. The only issue is whether the parties had entered into an indemnity agreement which would cover C & NW's liability. The District Court,[1] ruling on the parties' stipulation of facts, found that no such indemnity agreement existed, and dismissed C & NW's action. We affirm.

In 1977, Emmet arranged with C & NW to install a fertilizer unloader underneath C & NW's railroad tracks. The parties did not execute a written license or indemnity

agreement at the time. In January 1978, an Emmet employee named Timothy Jakubowski fell into the unloading pit and lost part of both his legs to its mechanical auger. Jakubowski filed a tort action against C & NW and the supplier of the unloader parts in July 1980. The case ultimately settled in 1985, with C & NW's liability to Jakubowski set at $375,000. The parties stipulated that C & NW's negligence was a proximate cause of Jakubowski's injury.

█ In January 1981, six months after Jakubowski filed suit against C & NW and three years after his injury, Emmet and C & NW signed a formal license agreement governing the fertilizer unloader. Paragraph 6 of this document obligates Emmet to indemnify C & NW "from any and all ... liability for any injury or death of any person [resulting from the use of the facility] ... even though the operation of the Company's railroad may have caused or contributed thereto." C & NW argues that Paragraph 6 of the 1981 license makes Emmet liable to C & NW for the amount of its settlement of Jakubowski's claim.

C & NW's reliance on a 1981 license to demand indemnity for a 1978 accident raises the immediate question whether the license has any retroactive effect. C & NW finds support for Emmet's retroactive obligation in Paragraph 7 of the license, which provides that

[i]n case any of the terms or provisions of this license have been performed or carried out prior to the actual date of execution thereof, it is understood and agreed that this license shall nevertheless be of the same force and effect as though same had been executed by the parties prior to such performance.

As a matter of simple contract interpretation, it is difficult to see how C & NW's negligent contribution to Jakubowski's accident qualifies as a "performance" of one of the license's provisions. The more sensible reading of Paragraph 7 interprets the

---

* The Hon. William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

1. The Hon. Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska.

pre-execution "performance of license terms" as acts (like the payment of taxes) which discharge a party's own obligations under the contract. If the parties had intended Emmet's indemnity obligation to extend to past accidents, they could easily have designed the language of Paragraph 7 to say exactly that.

The language of Paragraph 7 is ambiguous at best, and since this language occurs in a standardized contract prepared by C & NW, we incline toward resolving the ambiguity against C & NW. It is difficult to imagine that Emmet would have freely assented to the form license agreement had it contemplated that, at the moment of signature, Emmet would become fully responsible for C & NW's liability from an accident occurring three years before. The parties stipulate that Emmet was unaware that the license had any application to Jakubowski's injury, and that Emmet's employees would not have signed the license had they been aware of such a consequence. As a matter of common fairness, we decline to give C & NW the benefit of ambiguous language where it relies on an undeclared interpretation of the license terms which it should have known would have been unacceptable to Emmet at the time of negotiation. See Restatement (Second) of Contracts § 211(3).

C & NW presents an alternate theory of recovery—that Emmet had orally agreed as early as 1976 to maintain its fertilizer unloader subject to C & NW's "standard license agreement." Emmet had previously signed two license agreements covering facilities similar to the fertilizer unloader, each of which contained an indemnity provision. C & NW reasons that the indemnity clauses of these earlier licenses were incorporated by reference into an implied oral agreement governing the fertilizer unloader from 1976 onward.

The main difficulty with C & NW's position is that it asks us to infer the existence of a type of obligation that is not favored in Nebraska courts. Nebraska contract law presumes that a party cannot be indemnified for its own negligence unless "... the contract contains express language to that effect or contains clear and unequivocal language that that is the intention of the parties." *Peter Kiewit Sons Co. v. O'Keefe Elevator Co.*, 191 Neb. 50, 213 N.W.2d 731, 732 (1974). A single oral reference to the "standard license agreement" is simply not the kind of clear and unequivocal language which could rebut the presumption against indemnification for C & NW's own negligence. Nebraska law requires specific proof of the indemnitor's intent to be bound by such an extraordinary obligation, and the three words "standard license agreement" do not contain a sufficiently unequivocal statement of this intent.

Nor does a close examination of the two prior license agreements help C & NW's position. In the first place, the license for Emmet's lime chip unloader provides for an indemnity obligation slightly different from that for its anhydrous ammonia unloader: both create indemnity for "all liability ... [arising from the use of the facility] even though the operation of the Company's railroad may have caused or contributed thereto," but the former license adds the exclusion "... except when caused by the sole negligence of the Company." We are at a loss to decide which of the two indemnity provisions was incorporated into the oral agreement covering the fertilizer unloader. Nor is it clear whether either provision would allow C & NW to recover in this case. We cannot say unequivocally whether the term "operation of the railroad" necessarily includes acts of negligence committed during the operation, nor is it clear how the exclusion of indemnity for loss resulting from C & NW's "sole negligence" would apply in a case in which the supplier of the unloader parts also settled with the injured victim. In the interpretation of ordinary contract language, these questions would bear further examination, but here the obscurity of the answers is fatal in itself to C & NW's position. We agree with the District Court that nothing in the standard license agreements exhibits the clear and unequivocal expression of Emmet's intent to indemnify C & NW for its own negligence that Nebraska courts would require.

The judgment of the District Court is accordingly

Affirmed.