ATTORNEYS FOR APPELLANT
Robert D. MacGill
Michael D. Moon, Jr.
Kara M. Kapke
Matthew B. Barr
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana
Thomas M. Fisher
Solicitor General

Heather H. McVeigh
Deputy Attorney General
Indianapolis, Indiana

John C. Trimble
Lewis S. Wooton
Lewis Wagner, LLP
Indianapolis, IN

_____

# In the
# Indiana Supreme Court



_____

No. 49S02-1601-CT-51

IN RE: INDIANA STATE FAIR LITIGATION,

MID-AMERICA SOUND CORPORATION,

*Appellant/Defendant,*

v.

INDIANA STATE FAIR COMMISSION, *ET AL.*

*Appellees/Defendants,*

JILL POLET, *ET AL.*,

*Appellees/Plaintiffs.*[*]

_____

Appeal from the Marion Superior Court, Nos. 49D02-1111-CT-044823 and 49D02-1111-CT-044823-001 through 49D02-1111-CT-044823-010
The Honorable Theodore M. Sosin, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1404-CT-288

_____

**January 28, 2016**
**Corrected**

**Rush, Chief Justice.**

_____

[*] The plaintiffs have not appeared or otherwise participated in this appeal, but we include them in the caption because all parties of record in the trial court are parties on appeal. Ind. Appellate Rule 17(A).

Indiana courts strictly construe contracts to indemnify a party against its own negligence—recognizing that a party would not lightly accept liability for someone else's negligence. Thus, indemnity clauses must state the parties' intent to indemnify in clear and unequivocal language. Otherwise, we will not find a knowing and willing agreement to indemnify. And the need for explicit language is especially important when an agreement involves *retroactive* indemnity—since even in insurance contracts, where indemnity is the central purpose, we presume that insurers would not accept liability for a known, existing loss.

Here, Mid-America Sound argues that the Indiana State Fair Commission accepted liability for an existing, catastrophic loss—not through explicit contract language calling for retroactive indemnification, but through a years-long course of conduct in paying invoices that had standard indemnity language on the back. But as a matter of law, a form of liability so disfavored (especially when retroactive) cannot be *implied* from a course of dealing when it is not *expressed* by clear and unequivocal contract language. We therefore grant transfer and affirm the trial court's grant of summary judgment for the Commission.

**Facts and Procedural History**

Indiana has held its famed State Fair nearly every year since 1852. An evolving Hoosier tradition, the Fair has become more than just an agricultural exposition. It is now a major commercial event for the general public, attracting rural and urban Hoosiers alike—featuring concerts, tractor pulls, demolition derbies, monster truck shows, and a seemingly boundless supply of food.

The Indiana State Fair Commission (the "Commission") manages the Fair, and by extension, the concerts and other major events that take place at the Fair. Since the 1990s, the Commission utilized Mid-America Sound ("Mid-America") to provide equipment and services for those concerts and events. That equipment often included a temporary roof for the grandstand stage, speakers, and lights.

During the last ten years of their relationship, the Commission and Mid-America followed a standard routine. Before each Fair, they agreed on the equipment to be delivered and the corresponding prices. Then after the Fair, Mid-America would collect the equipment and submit a blank claim voucher form,[1] with invoices for the rentals attached. The Commission would then verify

---

[1] See Ind. Code § 5-11-10-1.6(c)(4) (2010) (stating that "[t]he fiscal officer of a governmental entity may not draw a warrant or check for payment of a claim unless," among other things, the officer "audits and certifies before payment that the invoice or bill is true and correct.").

whether all the invoiced items had actually been provided and, if so, sign the claim voucher to authorize payment. All told, the parties followed this course of dealing more than a hundred times over those ten years.

Tragedy struck on the closing night of the Fair in August 2011. Just prior to the Sugarland concert at the grandstand stage, strong winds approached the Fairgrounds. While Mid-America's on-site technicians worked to remove equipment hanging from Mid-America's roof, the roof collapsed, killing seven people and injuring many more. Shortly thereafter, the victims and families filed lawsuits naming several defendants, including Mid-America and the Commission. Then, on December 7, 2011, while those lawsuits were still pending, Mid-America sent the Commission a two-sided invoice for the lease of the collapsed roof and services provided, along with the single-sided claim voucher form. Above the Commission's signature, the voucher contained certifications "that the attached invoice is true and correct" and "in accordance with contract." The Commission signed the voucher and authorized payment, which it remitted via check.

In March 2012, Mid-America filed a third-party lawsuit against the Commission, claiming that two sentences located on the back of the December 2011 invoice entitled it to indemnification for its own negligence in relation to the August 2011 roof collapse. One of the two sentences, located under a heading entitled "Rentals," read as follows:

> [The Commission] assumes risks inherent in the operation and use of the equipment and agrees to assume the entire responsibility for the defense of, and to pay, indemnify and hold [Mid-America] harmless from and hereby releases [Mid-America] from any and all claims for damage to property or bodily injury (including loss of life) resulting from the use, operation or possession of the equipment, whether or not it be claimed or held that such damage or injury resulted in whole or in part from [Mid-America's] negligence, from the condition of the equipment or from any cause, [the Commission] agrees that no warranties, expressed or implied have been made in connection with this rental.

The other sentence, located under the "Shows" heading, set forth essentially the same language.

Mid-America and the Commission proceeded to file cross-motions for summary judgment, taking opposite positions about whether the December 2011 invoice's indemnity language applied retroactively to the August 2011 roof collapse. The trial court granted the Commission's motion, and Mid-America appealed. A divided Court of Appeals reversed and remanded, finding that genuine issues of material fact existed regarding whether the Commission knowingly and willingly agreed

3

to indemnify Mid-America for the roof collapse. <u>In re Ind. State Fair Litigation</u>, 28 N.E.3d 333, 343 (Ind. Ct. App. 2015).

### Standard of Review

As we have recently reiterated, summary judgment imposes a heavy factual burden on the moving party—and a correspondingly light burden for the non-movant's response—because "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." <u>Hughley v. State</u>, 15 N.E.3d 1000, 1004 (Ind. 2014). By definition, cases that hinge upon disputed facts are inappropriate for summary judgment, because "weighing [evidence]—no matter how decisively the scales may seem to tip—[is] a matter for trial, not summary judgment." <u>Id.</u> at 1005–06.

By contrast, matters of contract interpretation are "particularly well-suited for de novo appellate review," because they "generally present[] questions purely of law." <u>Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.</u>, 983 N.E.2d 574, 577 (Ind. 2013). A contract may be construed on summary judgment if it "is not ambiguous or uncertain," or if "the contract ambiguity, if one exists, can be resolved without the aid of a factual determination." <u>Warrick County ex rel. Conner v. Hill</u>, 973 N.E.2d 1138, 1144 (Ind. Ct. App. 2012), <u>trans. denied</u>. The meaning of a contract is a question for the factfinder, precluding summary judgment, only where interpreting an ambiguity requires extrinsic evidence. <u>Tate v. Secura Ins.</u>, 587 N.E.2d 665, 668 (Ind. 1992).

Moreover, our standard of review remains unchanged when, as here, the parties file cross-motions for summary judgment—we simply "consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." <u>SCI Propane, LLC v. Frederick</u>, 39 N.E.3d 675, 677 (Ind. 2015) (quoting <u>Reed v. Reid</u>, 980 N.E.2d 277, 285 (Ind. 2012)).

### Discussion

**I. Indiana Enforces Indemnity Provisions With Skepticism, Recognizing That Parties Would Not Lightly Accept Liability for Someone Else's Negligence—Especially for Existing Losses.**

    *A. Indiana requires "clear and unequivocal" language to indemnify for another's own negligence—tacitly recognizing that* retroactive *indemnity for existing losses is a burden few would willingly accept.*

Our analysis begins with a dim view of indemnity clauses like the one at issue here. At one time, Indiana flatly prohibited at least some contracts for indemnity against a party's own negligence.

4

See, e.g., Freigy v. Gargaro Co., 223 Ind. 342, 352, 60 N.E.2d 288, 292 (1945); Penn. R. Co. v. Kent, 136 Ind. App. 551, 560, 198 N.E.2d 615, 619 (1964) ("[A] railway company acting as a common carrier may not contract for indemnity against its own tort liability when it is performing either a public or quasi public duty such as that owing to a shipper, passenger, or servant, and . . . such contracts are void as against public policy." (emphases omitted)). We later retreated from that prohibition and now generally allow parties, as a matter of freedom of contract, "to allocate risk by contract"—including by agreeing to "indemnification for one's own negligence." Fresh Cut, Inc. v. Fazli, 650 N.E.2d 1126, 1130 (Ind. 1995) (citing Indianapolis Power & Light Co. v. Brad Snodgrass, Inc., 578 N.E.2d 669, 670 (Ind. 1991)). Even so, indemnity provisions are strictly construed—we treat them as "disfavor[ed] . . . because we are mindful that to obligate one party to pay for the negligence of another is a harsh burden that no party would lightly accept." Henthorne v. Legacy Healthcare, Inc., 764 N.E.2d 751, 757 (Ind. Ct. App. 2002). Accordingly, indemnity is permissible only if the contract language shows in "clear and unequivocal terms" that the obligated party "knowingly and willingly agrees to such indemnification." Id.

Moreover, our courts have generally taken for granted that the parties would be bargaining about *prospective* liability, by referring to "future acts of negligence" or making the agreement "in advance." E.g., Indianapolis Power & Light Co., 578 N.E.2d at 670 ("The rule in this state is that parties may by express contract lawfully indemnify against future acts of negligence."); Powell v. Am. Health Fitness Ctr. of Fort Wayne, Inc., 694 N.E.2d 757, 760 (Ind. Ct. App. 1998) ("[P]arties are permitted to agree *in advance* that one is under no obligation of care for the benefit of the other, and shall not be liable for the consequences of conduct which would otherwise be negligent." (emphasis added) (quoting Marshall v. Blue Springs Corp., 641 N.E.2d 92, 95 (Ind. Ct. App. 1994))). That assumption—that parties would bargain over only *prospective* liability—is rooted in the very nature of allocating *risk*.

One context in which Indiana has recognized that assumption is the "known loss" doctrine in insurance law—which embodies the commonsense principle that a party cannot "insure" against a loss that has already happened, because there is no "risk" left to be allocated:

> The "known loss" doctrine is a common law concept deriving from the fundamental requirement in insurance law that the loss be fortuitous. Simply put, the known loss doctrine states that one may not obtain insurance for a loss that has already taken place. Describing the known loss doctrine, commentators have noted that

5

losses which exist at the time of the insuring agreement, or which are so probable or imminent that there is insufficient "risk" being transferred between the insured and insurer, are not proper subjects of insurance.

. . . .

. . . [W]e hold that if an insured has actual knowledge that a loss has occurred, is occurring, or is substantially certain to occur on or before the effective date of the policy, the known loss doctrine will bar coverage. This is not to say, however, that parties may not explicitly agree to cover existing losses. Indeed, the known loss doctrine is inapplicable if the insurer also knew of the circumstances on which it bases the defense.

Gen. Housewares Corp. v. Nat'l Sur. Corp., 741 N.E.2d 408, 413–14 (Ind. Ct. App. 2000) (internal citations and quotation marks omitted) (citing, *inter alia*, 7 Lee R. Russ and Thomas F. Segalla, Couch on Insurance, § 102:8 at 20–21 (3d ed. 1997)).

The basic rationale of the known-loss rule applies with equal force in the context of this non-insurance indemnity provision. If a *potential future* liability "is a harsh burden that a party would not lightly accept," GKN Co. v. Starnes Trucking, Inc., 798 N.E.2d 548, 552 (Ind. Ct. App. 2003), then *actual retroactive* liability for a known loss is harsher still—indeed, it would ordinarily be a fool's bargain. "This is not to say, however, that parties may not *explicitly* agree to cover existing losses," Gen. Housewares, 741 N.E.2d at 414 (emphasis added)—that is, "in clear and unequivocal terms," to be strictly construed. GKN Co., 798 N.E.2d at 552. But Indiana law makes clear that we will not *infer* a party's agreement to such an onerous liability unless that intent is expressed unmistakably.

B. *Because indemnity provisions must be expressed unambiguously—especially when retroactive—they may not be inferred from a course of dealing.*

Though Indiana contract law suggests a particularly strong disfavor for retroactive indemnity provisions as discussed above, we have never squarely addressed the retroactivity question. Nine other jurisdictions, however, have similarly concluded that such an extraordinary obligation as retroactive indemnity must be expressed unmistakably. Georgia states the rule particularly emphatically, requiring agreements for retroactive indemnity to be stated "expressly, plainly, clearly, and unequivocally" to be valid. Service Merch. Co. v. Hunter Fan Co., 617 S.E.2d 235, 240 (Ga. Ct. App. 2005).

Delaware, Hawaii, Iowa, Michigan, Nebraska, and New York declare similar standards, requiring such provisions to be completely unambiguous. Fina, Inc. v. ARCO, 200 F.3d 266, 273 (5th Cir. 2000) (Delaware law); Chicago & N.W. Transp. Co. v. Emmet Fertilizer & Grain Co., 852 F.2d 358, 360 (8th Cir. 1988) (finding that under Nebraska law, "[i]f the parties had intended [the] indemnity obligation to extend to past accidents, they could easily have designed the language . . . to say exactly that."); Servco Pac. Inc. v. Dods, 193 F. Supp. 2d 1183, 1193 (D. Haw. 2002) (holding that retroactive indemnity provision must be stated "clearly and unequivocally"); DaimlerChrysler Corp. v. Wesco Distribution, Inc., 760 N.W.2d 828, 833 (Mich. Ct. App. 2008) (noting that an indemnity clause "cannot be construed to operate retrospectively unless . . . the parties expressly provide so in their agreement" (internal citation and quotation marks omitted)); Quality King Distribs., Inc. v. E & M ESR, Inc., 827 N.Y.S.2d 700, 703 (N.Y. App. Div. 2007) (finding that an indemnity clause has no retroactive effect "unless by its express words or necessary implication it clearly appears to be the parties' intention to include past obligations" (internal quotation marks omitted)); Evans v. Howard R. Green Co., 231 N.W.2d 907, 916–17 (Iowa 1975) (noting that such clauses must "plainly manifest[] an intention, not to be limited to future losses or liabilities, but also to cover past transactions and existing losses or liabilities" (quoting 42 C.J.S. Indemnity § 12(b), p. 581)). And Maryland and Pennsylvania simply take for granted—seemingly as too obvious for analysis—that indemnity clauses cannot apply to liabilities that predate the contract. See Bunker Ramo-Eltra Corp. v. Fairchild Indus., 639 F. Supp. 409, 419 (D. Md. 1986) (holding that indemnity clause of stock-purchase agreement did not apply to a different share purchase prior to the date of the agreement); Werner v. Big Sky Shop, 630 F. Supp. 444, 451 (E.D. Pa. 1985) (holding that indemnity provision in contract did not extend to an injury that occurred seven months earlier).[2]

Each of these decisions is consistent with Indiana's requirement of "clear and unequivocal" language—construing such provisions strictly, as New York has explained, "to avoid reading into them duties which the parties did not intend to be assumed." Quality King, 827 N.Y.S.2d at 702. But two cases, one from Michigan and one from Iowa, are particularly analogous, because they involve indemnity language contained in routine, standard-form documents exchanged after an accident.

---

[2] Additionally, Massachusetts has refused to apply a contract's indemnity clause to an injury that happened three days earlier on grounds that "[p]ast consideration does not support a contract." Greater Boston Cable Corp. v. White Mountain Cable Constr. Corp., 604 N.E.2d 1315, 1317 (Mass. 1992).

In <u>DaimlerChrysler</u>, a Wesco employee was hurt while preparing a quote for electrical repair work at a DaimlerChrysler ("DC") plant. 760 N.W.2d at 830. After the accident, DC issued Wesco a purchase order for the quoted work, with language requiring Wesco to indemnify DC for losses "arising out of or related to the performance of any work in connection with this contract." <u>Id.</u> at 830–31. The court held that the language of the post-accident purchase order did not show an intent to indemnify for pre-contract losses:

> It is one thing to decide whether an injury occurring *during* the term of the contract falls within the contract's coverage language, but it is quite another to decide whether a party has agreed to indemnify another for an injury that occurred *before* the indemnity provision was agreed upon. Hence, . . . we must look to whether the parties provided language that shows an intent to require indemnification for *precontract* activity.

<u>Id.</u> at 834. Finding no such terms in the purchase order, the court held Wesco had no obligation to indemnify DC for losses in connection with the pre-contract accident. <u>Id.</u>

Similarly, in <u>Employers Mutual Casualty Co. v. Estate of Lartius</u>, an employer rented a crane for a day, and his employee was injured while using it. No. 06-1725, 2007 WL 3087505, at \*1 (Iowa Ct. App. Oct. 24, 2007).[3] Twelve days later, the employer rented another crane from the same company, and when he returned it, he paid both days' rental fees and initialed a "work order" for both days that contained small-print indemnity language on the front. <u>Id.</u> The employer did not read the work order before initialing it, even though all parties were aware of the employee's injury. <u>Id.</u> Even though the employer's failure to read the work order did not make its terms unenforceable, the terms themselves could not be construed to impose retroactive liability because the contract language did not "specifically provide[] for . . . indemnification of Crane Rental's prior losses or liabilities" and therefore was "not sufficient to meet the plain and manifest intent requirement of <u>Evans</u>." <u>Id.</u> at \*3–\*4 (citing <u>Evans</u>, 231 N.W.2d at 917).

Bearing in mind the skepticism with which Indiana and other states view alleged agreements to indemnify retroactively for known losses, we now turn to Mid-America's contention that it reached such an agreement with the Commission through a long-running course of dealing.

---

[3] Iowa's appellate rules permit citation to unpublished opinions, though such opinions "shall not constitute controlling legal authority." Iowa R. Civ. P. 6.904(2)(c).

## II. Because the Contract Language Fails to "Clearly and Unequivocally" Provide Retroactive Indemnification for a Known Loss, We Will Not Infer Such a Provision from a Course of Dealing.

Though none of the indemnity language in this invoice expressly extends to losses prior to the invoice date, Mid-America argues that its course of dealing with the Commission established such an agreement—or at least raises a question of fact of whether such an agreement existed. Again, the parties stopped exchanging contracts *before* the Fair in 2002 and began using claim vouchers and invoices *after* the Fair—and then, starting in 2003, the invoices included the same indemnity language at issue here. (For purposes of the Commission's motion for summary judgment, we also take as true Mid-America's contention that it added that language because of a disagreement at a previous year's Fair about how to handle a potential safety hazard during inclement weather.) And the claim vouchers, which the Commission signed and submitted for payment, certified that the attached invoices—including the indemnity language they contained—were "in accordance with [the] contract."

In essence, Mid-America argues that under this course of dealing, the invoices' indemnity language is not being applied retroactively. Instead, it asserts that the invoices memorialized a standing recognition from each *previous* year's dealings that the *following* year's rental would be subject to the same indemnification requirements. But the Eighth Circuit, applying Nebraska law, rejected a similar argument in Emmet Fertilizer, 852 F.2d at 359–60. There, Emmet had installed a fertilizer unloader at a railroad's facility in 1977. Id. at 359. Then in 1978, an Emmet employee was badly hurt while operating the unloader and later settled a negligence claim against the railroad for his injuries. Id. The railroad then sought indemnification from Emmet based on indemnity language in a 1981 license agreement for the unloader. Id. The Emmet Court first observed that the license did not unambiguously provide for retroactive effect, and that "[i]f the parties had intended Emmet's indemnity obligation to extend to past accidents, they could easily have designed the language . . . to say exactly that." Id. at 360.

The Court then rejected an argument much like the course-of-dealing claim Mid-America makes here—that Emmet knew its installation would be subject to the indemnity provisions of the railroad's "standard license agreement," which Emmet had signed twice before as part of similar installations:

> [The railroad] presents an alternate theory of recovery—that
> Emmet had orally agreed as early as 1976 to maintain its fertilizer

9

> unloader subject to [the railroad's] "standard license agreement." Emmet had previously signed two license agreements covering facilities similar to the fertilizer unloader, each of which contained an indemnity provision. [The railroad] reasons that the indemnity clauses of these earlier licenses were incorporated by reference into an implied oral agreement governing the fertilizer unloader from 1976 onward.

Id. But the Court refused to rely on that course of dealing "to infer the existence of a type of obligation that is not favored in Nebraska courts" in the absence of "clear and unequivocal language"—specifically noting that "Nebraska law requires specific proof of the indemnitor's intent to be bound by such an extraordinary obligation." Id. (citation omitted).

We reach the same conclusion here, for the same reasons. As we have explained, Indiana law likewise requires a "clear and unequivocal" expression of a "knowing[] and willing[]" agreement to indemnify a party for its own negligence, GKN Co., 798 N.E.2d at 552—and moreover, to say so "explicitly" if they further intend that liability "to cover existing losses," Gen. Housewares, 741 N.E.2d at 414. Even accepting all of Mid-America's evidence as true for purposes of summary judgment, see Hughley, 15 N.E.3d at 1003, the parties' course of dealing cannot substitute for a "clear and unequivocal" indication in the contract itself that the Commission "knowingly and willingly" agreed to indemnify Mid-America for its own negligence in connection with a catastrophic loss that had already happened. See GKN Co., 798 N.E.2d at 552.

Mid-America's reliance on Southern Railway Company v. Arlen Realty & Development Corp., a Virginia case taking the opposite view, is misplaced. 257 S.E.2d 841 (Va. 1979). There, Arlen leased trailers from the railroad for several years, usually executing the lease agreements after picking up the trailers. Id. at 842. An Arlen employee sued the railroad after being injured while picking up a trailer. Id. at 842–43. The railroad pursued Arlen based on indemnity language in the lease agreements, but Arlen argued the language was not binding because the lease was not signed until after the employee's accident. Id. at 843, 845. The court disagreed, "finding that the parties, by their course of dealings, had assented to and adopted the terms of the printed form as their agreement . . . in hundreds of transactions between the parties over a period of several years preceding" the employee's injury. Id. at 845. But Virginia is an outlier in that it treats indemnity agreements just like any other contract. See Carpenter Insulation & Coatings Co. v. Statewide Sheet Metal & Roofing Corp., 937 F.2d 602, *3 (4th Cir. 1991) (unpublished) ("Under Virginia law, indemnity contracts are

construed under the general rules that govern the interpretation of any other type of contract."). And, in more than 35 years, <u>Arlen</u> has been cited on this course-of-dealing issue only once—by the Court of Appeals' now-vacated decision in this case. Mid-America points to no other similar holding, and we find none. We therefore decline to follow <u>Arlen</u>, which represents a minority view based on different contract-law principles.

In summary, then, the principle we deduce from Indiana contract law (and confirmed by the States that follow similar principles) is this: Indemnification for another party's negligence—especially retroactively—is an "extraordinary obligation" that is generally "not favored." <u>Emmet Fertilizer</u>, 852 F.2d at 360. Accordingly, as a matter of law, we will not infer that obligation from a course of dealing when, as here, the parties' contract does not expressly call for it in "clear and unequivocal terms." <u>GKN Co.</u>, 798 N.E.2d at 552. The trial court therefore correctly granted summary judgment for the Commission and against Mid-America.

In view of that conclusion, we express no opinion on whether the Commission is a governmental entity with immunity under the Indiana Tort Claims Act (ITCA), Ind. Code ch. 34-13-3; whether indemnity for another party's negligence is a tort- or contract-based liability for ITCA purposes; or whether the invoices' indemnity language is void against public policy. But those arguments do illustrate why Mid-America's failure to make a "clear and unequivocal" demand for retroactive indemnification is particularly significant in these circumstances. Regardless of their merits, those claims are not implausible—and therefore it seems that a party seeking to impose such a disfavored liability under these circumstances would have particular incentive to draft its contract in the clearest and most unequivocal terms possible. Mid-America's failure to do so here further underscores why we should not *infer* an extraordinary liability when a contract fails to provide for it expressly.

### Conclusion

The terms of Mid-America's invoices to the Commission did not clearly and unequivocally provide for retroactive application, and as a matter of law, we will not infer such an onerous provision from the parties' course of dealing. We therefore affirm the trial court's grant of summary judgment to the Commission.

Dickson, Rucker, David, and Massa, JJ., concur.

11