# FOR PUBLICATION



ATTORNEYS FOR APPELLANTS:

**BRIAN L. ENGLAND**
**RYAN J. GUILLORY**
Hunt Suedhoff Kalamaros LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**MARK K. PHILLIPS**
Law Offices of Mark K. Phillips
Boonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

WARRICK COUNTY, INDIANA, A Political )
Subdivision, by and through its County )
Commissioners, Nova Conner, Don Williams, )
And Phillip Baxter, and CINCINNATI )
INSURANCE CO., )
                                                  )
       Appellants-Defendants,[1] )
                                                  )
       vs. )     No. 87A01-1201-PL-8
                                                  )
WILLIAM HILL and STACY HILL, )
                                                  )
       Appellees-Plaintiffs. )

## APPEAL FROM THE WARRICK SUPERIOR COURT
The Honorable Keith A. Meier, Judge
Cause No. 87D01-0811-PL-563

**August 7, 2012**

---

[1] Warrick County has filed the instant appeal and is not joined by Cincinnati Insurance Company. Nevertheless, a party of record in the trial court shall be a party on appeal. *See* Ind. App. R. 17(A).

**BRADFORD, Judge**.

In this interlocutory appeal, Appellant-Defendant Warrick County, Indiana, challenges the trial court's denial of its motion for summary judgment in an action brought against it and Cincinnati Insurance Company by Appellees-Plaintiffs William Hill and Stacy Hill. Upon appeal, Warrick County claims that the trial court erred in denying summary judgment on multiple grounds. We affirm.

## FACTS AND PROCEDURAL HISTORY

The Hills are residents of Warrick County, Indiana, and have a house on Framewood Drive in Newburgh. In 2001 and 2002, Warrick County performed drainage work in a ditch adjacent to the Hills' home. The work involved installing a polyethylene pipe into the ditch and subsequently filling the ditch with backfill, thereby eliminating the ditch. Thereafter, the Hills discovered that the crawl space under their home had significant standing water. The Hills contacted Warrick County. In September of 2002, Warrick County sent contractor MCF to the Hills' residence to install underground downspout lines and direct them into an open ditch in back of the Hills' property, as a remedy. Apparently, downspout lines which had previously drained the Hills' home's roof gutters into the now-filled ditch adjacent to their property had been disconnected during the drainage project. MCF additionally installed a sump pump.

On November 20, 2002, the Hills signed an Agreement and Release in which Warrick County agreed to pay MCF's $2714 bill and the Hills $500 in additional damages. In

exchange, the Hills agreed to "release[] and forever discharge[]" Warrick County from certain claims or liability. App. p. 63. The Release Agreement identified the Hills' water problem and the scope of the release as follows:

> [T]he [Hills] have contended that they have suffered certain damages to their home caused by interference with a certain drain which drains down spouts from the roof gutters on this home into an open ditch which had been running along the side of the real estate owned by the [Hills] which caused water to fill the crawlspace underneath said home and which the [Hills] contend has caused mold to accumulate within the home and has caused the [Hills] to incur certain expense in order to correct said drainage problem[.]
>
> ***
>
> [T]he [Hills] further have contended that the above damage to their home along with the accumulation of water under the crawlspace has been caused by blockage of the drains caused by the County in installing a drain pipe into that open ditch;
>
> ***
>
> [The Hills] now expressly agree that the County is released and forever discharged from any claims or liability for any damages that may now or may hereafter be discovered as a result of the aforementioned blockage or interference with the drainage from the home of the [Hills] as hereinabove referred to[.]

App. pp. 62-63.

Thereafter, the Hills continued to have problems with accumulating water, including water in the crawlspace and sink holes in their yard. The Hills contacted Warrick County many times after MCF completed its work. According to Ms. Hill, Warrick County indicated that the sink holes were unrelated to drainage and probably due to heavy rain.

In approximately May 2007, Ms. Hill noticed that brick had begun to pull away from the side of her house. She also noticed cracks in the brick wall on her home's west side. Ms. Hill contacted her insurance carrier, who sent an adjuster to the house, and ultimately hired an engineering firm. In August of 2007, Donan Engineering issued a report indicating that

3

the Hills' home's structural problems were attributable to the high moisture condition in the foundation soil. On December 5, 2007, Andy Easley Engineering submitted a report indicating that the moisture and foundational problems were due to the County's eliminating the open ditch adjacent to the Hills' home, leading to a higher water table. Easley recommended the construction of a groundwater interception drain to lower the ground water level on the Hills' property.

On December 14, 2007, the Hills submitted a notice of tort claim, and on November 25, 2008, filed a complaint against Warrick County and Cincinnati Insurance Company seeking damages caused by Warrick County's filling of the drainage ditch. In their complaint, the Hills alleged that Warrick County's elimination of the ditch was not contemplated by their Release Agreement. In its answer, Warrick County asserted that the Hills' claims were barred on several grounds, including (1) failure to provide timely Notice of Tort Claim under the Indiana Tort Claims Act; (2) the six-year statute of limitations; and (3) operation of the Release Agreement.

On July 9, 2011, Warrick County moved for summary judgment on the above three grounds. On August 12, 2011, the Hills filed a response disputing Warrick County's claims for summary judgment and requesting trial. Following Warrick County's September 19, 2011 reply, the trial court held a hearing on October 11, 2011, after which it denied Warrick County's motion on October 18, 2011.[2] Warrick County petitioned the trial court to certify

---

[2] At the same time, the court granted Defendant Cincinnati Insurance Company's motion for summary judgment.

4

the matter for interlocutory appeal, which it did. This court accepted the appeal on February 20, 2012.

## DISCUSSION AND DECISION

Upon appeal, Warrick County challenges the trial court's grant of summary judgment. On appeal, the standard of review for a summary judgment motion is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Reeder v. Harper*, 788 N.E.2d 1236, 1240 (Ind. 2003) (citing Ind. Trial R. 56(C)). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Id.* Review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied its day in court. *Id.*

### I.    Indiana Tort Claims Act

The parties do not dispute the applicability of the Indiana Tort Claims Act ("ITCA"). Under section 34-13-3-8 (2007) of the ITCA, a tort claim against a political subdivision is barred unless notice is filed with the political subdivision within one hundred eighty (180) days after the loss occurs.

On appeal, we are generally bound by the same standard as the trial court, specifically, that we must consider all designated material in the light most favorable to the nonmoving party. *Huntington v. Riggs*, 862 N.E.2d 1263, 1266 (Ind. Ct. App. 2007), *trans. denied*. However, compliance with the notice provisions of the ITCA "'is a procedural precedent

5

which the plaintiff must prove and which the trial court must determine prior to trial.'" *Hupp v. Hill*, 576 N.E.2d 1320, 1323 (Ind. Ct. App. 1991) (quoting *Ind. Dep't of Highways v. Hughes*, 575 N.E.2d 676, 678 (Ind. Ct. App. 1991)). Accordingly, judgments based upon compliance with ITCA are subject to review as negative judgments, which we will reverse only if contrary to law. *Id.* at 1324. Otherwise stated, a negative judgment may only be reversed if the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to a conclusion other than that reached by the trial court. *Capital Drywall Supply, Inc. v. Jai Jagdish, Inc.*, 934 N.E.2d 1193, 1199 (Ind. Ct. App. 2010).

Warrick County points to designated evidence indicating that the Hills's observation of water problems occurred on a continuing basis since 2002. According to Warrick County, the continuing nature of the water problems links them to the original problems observed and addressed in 2002. Given this alleged 2002 origin of the problems, the Hills' December 2002 Notice of Tort Claim, in Warrick County's view, fell well outside the statutory 180-day time frame.

The Hills respond by arguing that the issue of structural damage to their home was not discovered until May 2007, that they did not know its cause until December 2007, and that they filed their notice of tort claim regarding this structural damage on December 14, 2007, which was within the 180 days.

In denying Warrick County's motion for summary judgment, the trial court observed[3] from the designated evidence that the 2002 water problems were attributed to unconnected downspouts. The court also observed that the structural damage discovered in 2007 was attributed to excessive soil moisture content resulting from the elimination of a ditch adjacent to the Hills' home. Distinguishing the downspout problem from the excessive moisture content problem, the court observed that the structural damage and its cause were not discovered until as late as December 2007, and concluded that the Hills were within the ITCA's 180-day time frame when they filed their notice.

We find no error in the trial court's decision. The undisputed evidence demonstrates that Warrick County's drainage project involved more than one component, including disconnecting existing downspouts and filling in an existing ditch. The 2002 problems were attributed, by an expert contractor, to the disconnected downspouts. The 2007 problems, in contrast, were attributed by an expert to the removal of a ditch and the resulting excessive soil moisture content. These problems are easily distinguished: one involves the inadequate means by which excessive water is removed; the other, the factors forcing an excessive amount of water into the soil. The presence in 2002 of downspout problems could not be said to indicate the existence of other problems. To the contrary, the fact of their diagnosis likely eliminated speculation about other causes. Given the multi-part nature of Warrick County's drainage redirection project, we reject its contention that the presence of some

---

[3] The judgment contains a footnote indicating that any statements listed in the judgment do not constitute findings and conclusions, and that any information listed in the order is simply included for purposes of providing "some guidance to the thoughts of the court."

7

water problems necessarily placed the Hills on notice of the origin of all problems. We find no error in the trial court's refusing to grant summary judgment on ITCA timing grounds.

## II. Statute of Limitations

Warrick County additionally claims that the Hills' claims are barred by Indiana Code section 34-11-2-7 (2007), which enforces a six-year statute of limitations on actions for injury to property other than personal property. Warrick County's argument is premised upon its contention that injury to the Hills' property occurred in 2002 or earlier. The Hills do not dispute the applicability of section 34-11-2-7 but claim that their injury occurred in 2007, when they discovered the structural damage to their home.

Under Indiana's discovery rule, a cause of action accrues, and the limitation period begins to run, when a claimant knows or in the exercise of ordinary diligence should have known of the injury. *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009). The determination of when a cause of action accrues is generally a question of law. *Id.* For an action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred. *Id.*

In denying Warrick County's motion for summary judgment on statute of limitations grounds, the trial court relied upon the same reasoning it used in denying summary judgment on ITCA grounds. The court specifically observed that the Hills did not discover the structural damage to their home until May 2007, and they did not know it was attributable to the filling of the drainage ditch until December 2007. The filing of their complaint in November 2008, it concluded, was therefore well within the six-year statute of limitations.

8

The reasoning we used to affirm the trial court's ITCA ruling is similarly applicable here. While the Hills may have experienced ongoing water problems, the downspout problems discovered and addressed in 2002 do not demonstrably encompass the structural damage/excessive soil moisture content discovered in 2007. Accordingly, we find no error in the trial court's denial of summary judgment on section 34-11-2-7 grounds.

### III. Discovery Rule

Warrick County further argues that the discovery rule should not apply to toll the ITCA and statute of limitations deadlines because, in its view, the Hills were aware of some damage in 2002, even if they were not aware of the full extent of this damage. Warrick County cites to multiple cases from other jurisdictions in support of this point.

There can be no question that a cause of action may accrue before the full extent of damage is known or ascertainable, so long as some damage is ascertainable. *See Cooper Indus.*, 899 N.E.2d at 1280. But here, as the trial court concluded, the evidence demonstrates no ascertainable damage to the structure of the Hills' home until 2007. The evidence indicating that there were water problems on the Hills' property prior to that time does not demonstrate that these problems had caused structural damage to their home or that they were attributable to Warrick County's actions. Warrick County does not dispute that a cause of action accrues when a plaintiff has notice of his injury and its cause. *See Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 77 (Ind. Ct. App. 2010) (observing that cause of action accrues when plaintiff knows or should have discovered that he has sustained

9

an injury due to the act of another), *trans. denied*. Warrick County's argument on this point warrants no relief.

### IV. Release Agreement

Finally, Warrick County points to the Release Agreement the Hills signed in 2002 and claims that its terms preclude their current action. Generally, the construction of a written contract is a question of law for the trial court for which summary judgment is particularly appropriate. *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 687 (Ind. Ct. App. 2006). If the terms of a written contract are ambiguous, however, it is the responsibility of the trier-of-fact to ascertain the facts necessary to construe the contract. *Id.* Consequently, when summary judgment is granted based upon the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or that the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. *Id.*

In denying Warrick County's motion for summary judgment, the trial court referenced the language in the Release Agreement identifying as problematic the "interference with a certain drain which drains down spouts from the roof gutters on this home into an open ditch" and the "blockage of the drains by the County in installing a drain pipe into [an] open ditch." As the trial court observed, nothing in the Release Agreement mentioned an elevated water table, nor did any language connect the known blockage problems with structural damage to the home.

10

It appears that the trial court concluded the language of the Release Agreement was unambiguous and clearly did not cover structural damage caused by the heightened water table brought about by the County's filling of the ditch. To the extent the trial court may have found an ambiguity, the denial of summary judgment demonstrates that the ambiguity could not be resolved without the aid of a factual determination.

We find no error in the trial court's decision. The Release Agreement, which specifically referenced the problematic downspouts, did not mention the complete elimination of the drainage ditch or structural damage to the home, suggesting that these problems were not a contemplated term of the release. Warrick County suggests that certain language referencing "other damages" and "interference with drainage from the home" demonstrates that the structural problems now at issue were an understood term in the Release Agreement. Given the multiple sources of water problems and their varying effects, we are unpersuaded that certain identified problems in the Release Agreement also implicated unidentified problems. At most, the language creates an ambiguity, construed against the drafter, for a fact-finder to resolve. *See MPACT Const. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004) ("When there is ambiguity in a contract, it is construed against its drafter."). We find no abuse of discretion in the trial court's denial of summary judgment on this ground.

The judgment of the trial court is affirmed.

ROBB, C.J., and BAKER, J., concur.