

Oct 11 2017, 5:36 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Daniel H. Pfeifer
James P. Barth
Pfeifer Morgan & Stesiak
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Timothy J. Abeska
Brian E. Casey
Barnes & Thornburg LLP
South Bend, Indiana

Alice J. Springer
Barnes & Thornburg LLP
Elkhart, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

Bobick's Pro Shop, Inc.,

*Appellant-Plaintiff,*

v.

1ˢᵗ Source Bank,

*Appellee-Defendant.*

October 11, 2017

Court of Appeals Case No.
71A04-1703-CT-655

Appeal from the St. Joseph
Superior Court

The Honorable Jenny Pitts Manier,
Judge

Trial Court Cause No.
71D05-1410-CT-356

**Najam, Judge.**

## Statement of the Case

[1]  Bobick's Pro Shop, Inc. ("BPS") appeals the trial court's grant of summary

judgment to 1st Source Bank ("1st Source").  BPS raises two issues for our

review, but we consider only the following dispositive issue: whether the trial court erred when it concluded that an "Agreement for Deed in Lieu of Foreclosure" ("the Agreement") between BPS and 1st Source entitled 1st Source to judgment as a matter of law.

We affirm.[1]

## Facts and Procedural History

In September of 2009, BPS, 1st Source, and Donna J. Bobick ("Bobick") entered into the Agreement. The Agreement provided in relevant part as follows:

RECITALS

A. [BPS] is the record owner of certain real property located in St. Joseph County . . . .

B. [BPS] and [1st Source] are parties to [a] . . . Real Estate Mortgage and Security Agreement dated October 29, 1999[,] and recorded . . . on November 4, 1999 . . . .

C. The indebtedness of [BPS] owed to [1st Source] . . . arising under the Mortgage was, as of September 22, 2009, . . . in the approximate sum of $2,550,326.16 ("Mortgagor's Obligations").

---

[1] Because we agree with the trial court that the Agreement entitles 1st Source to judgment as a matter of law on BPS's claims, we need not consider BPS's additional argument on appeal that the trial court abused its discretion when it struck certain evidence regarding the value of the real property underlying the Agreement.

D.      [BPS] is in default under the terms of the Mortgage and is presently unable to pay Mortgagor's Obligations.

E.      [BPS] and Bobick are parties to [a] . . . Mortgage dated October 23, 2001[,] and recorded . . . on October 24, 2001 . . . (the "Junior Mortgage").  The indebtedness of [BPS] . . . to Bobick arising under the Junior Mortgage as of September 22, 2009[,] is . . . in the sum of $565,607.30 and bears interest at a rate of $150.43 per diem (the "Bobick Obligations").

* * *

G.      [BPS] has proposed a settlement to [1st Source] and to Bobick so as to induce [1st Source] to forego the exercise of its default remedies such as foreclosure[] and to accept instead a deed in lieu of foreclosure in full satisfaction of Mortgagor's Obligations.

H.      [1st Source] and Bobick have each agreed to a settlement with [BPS] pursuant to the terms and conditions set forth hereinafter.

NOW THEREFORE in consideration of the above recitals of fact (which shall be deemed binding covenants of the parties) and the several agreements between the parties hereinafter set forth, and in reliance thereon, the parties AGREE AS FOLLOWS:

1.      SETTLEMENT AGREEMENT.  This Agreement is an integral part of a settlement between [1st Source] and [BPS].

2.      RELEASE OF JUNIOR MORTGAGE.  Concurrent with the execution of this Agreement, Bobick has delivered to [1st Source] a release of the Junior Mortgage . . . .

* * *

4.    [BPS]'S DEED IN LIEU OF FORECLOSURE.
Concurrent with the execution of this Agreement, [BPS] has
executed and delivered to [1st Source] a Deed in Lieu of
Foreclosure . . . conveying to [1st Source] all of [BPS's] right,
title[,] and interest in and to the Property and all improvements
thereon including fixtures.


5.    NO MERGER.  [BPS], Bobick[,] and [1st Source]
expressly acknowledge and agree that the interest to be acquired
by [1st Source] pursuant to the Deed shall not merge with the
liens and security interests of [1st Source] in the Property under
the Mortgage, but that such liens and security interests shall be
and remain at all times separate, distinct, valid, perfected and
continuous liens and security interests on the Property until
expressly released by [1st Source]. . . .


* * *


10.    APPLICATION OF PROCEEDS OF THE PROPERTY.
*[1st Source] may dispose of the Property in such manner* (including but
not limited to whether as a single parcel or as multiple parcels)
*and at such time as it determines in its sole and absolute discretion*.  All
costs of [1st Source] arising out of or related to its holding,
maintaining, leasing, developing, subdividing, selling[,] or
disposing of the Property (including but not limited to the costs
of satisfying any mortgage, lien[,] or encumbrance on the
Property and of acquiring [a third-party's property]), net of any
rental or similar revenues actually received by [1st Source] from
the Property, are referred to in this Agreement as [1st Source's]
"Costs."  The sum of (i) Mortgagor's Obligations as of the date of
this Agreement, plus (ii) [1st Source's] Costs, plus (iii) interest on
both (i) and (ii) at a rate per annum of the greater of (x) seven
percent (7.00%) or (y) [1st Source's] "Prime Rate" of

interest . . . plus three and one-half percent (3.50%), is referred to in this Agreement as the "Amount Payable to Bank." Interest will be accrued in the same manner as [1st Source] has accrued interest on the Mortgagor's Obligations prior to the date of this Agreement. *Upon any sale or other disposition by [1st Source] of the Property, [1st Source] will apply the proceeds of sale (i) first, to the Amount Payable to Bank, until that amount has been fully satisfied, (ii) the excess, if any, ninety percent (90%) to the Bobick Obligations and the remaining ten percent (10%) retained by [1st Source], until the Bobick Obligations have been fully satisfied, and (iii) the excess, if any, distributed eighty percent (80%) to [BPS] and the remaining twenty percent (20%) retained by [1st Source].*

Appellant's App. Vol. 2 at 22-26 (emphases added).

[4]     Following the Agreement, 1st Source placed the property in other real estate owned ("OREO") on its balance sheet.[2] Over the next three years, 1st Source attempted to sell the property, but 1st Source never received an offer higher than a $2.9 million offer it received in 2012. 1st Source declined that offer and instead sold the property to itself for the same amount. There is no dispute that the proceeds of that sale were insufficient to result in a distribution to BPS.

[5]     BPS filed suit against 1st Source. In its amended complaint, BPS alleged that 1st Source's sale of the property to itself was a breach of the Agreement. BPS also alleged that 1st Source's sale was an act of criminal fraud.[3] Thereafter, the

---

[2] BPS's mortgage loan was a nonperforming asset and, sooner or later, regulatory authorities would have required 1st Source to charge off the loan and move the asset into OREO.

[3] In its briefs on appeal, BPS repeatedly and mistakenly describes its criminal fraud claim as a fraudulent transfer claim. *See* Ind. Code §§ 32-18-2-14 (2017) (fraudulent transfer); 35-43-5-4(8) (criminal fraud); *see also*

parties cross-moved for summary judgment, and, after a hearing, the trial court granted summary judgment to 1st Source based in relevant part on the "unambiguous . . . terms" of the Agreement. *Id.* at 11. This appeal ensued.

## Discussion and Decision

[6] BPS appeals the trial court's grant of summary judgment to 1st Source. Our standard of review is clear:

> As we have recently reiterated, summary judgment imposes a heavy factual burden on the moving party—and a correspondingly light burden for the non-movant's response—because "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014). By definition, cases that hinge upon disputed facts are inappropriate for summary judgment, because "weighing [evidence]—no matter how decisively the scales may seem to tip—[is] a matter for trial, not summary judgment." *Id.* at 1005-06.

> By contrast, matters of contract interpretation are "particularly well-suited for de novo appellate review," because they "generally present [ ] questions purely of law." *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577 (Ind. 2013). A contract may be construed on summary judgment if it "is not ambiguous or uncertain," or if "the contract ambiguity, if one exists, can be resolved without the aid of a factual determination." *Warrick County ex rel. Conner v. Hill*, 973 N.E.2d 1138, 1144 (Ind. Ct. App. 2012), *trans. denied*. The

---

Appellee's App. Vol. II at 58 (stating a claim for criminal fraud and expressly noting that "the Indiana Uniform Fraudulent Transfer Act . . . is not the basis for BPS's cause of action . . . .").

> meaning of a contract is a question for the fact[-]finder, precluding summary judgment, only where interpreting an ambiguity requires extrinsic evidence. *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992).
>
> Moreover, our standard of review remains unchanged when, as here, the parties file cross-motions for summary judgment—we simply "consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *SCI Propane, LLC v. Frederick*, 39 N.E.3d 675, 677 (Ind. 2015) (quoting *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012)).

*Mid-America Sound Corp. v. Ind. State Fair Comm'n (In re Ind. State Fair Litigation)*, 49 N.E.3d 545, 548 (Ind. 2016).

[7] BPS asserts that 1st Source breached the Agreement when 1st Source sold the property to itself. According to BPS, "[p]ursuant to the plain language of the Agreement, 1st Source had limited discretion related to the manner and time for disposing of the Property." Appellant's Br. at 16-17. BPS further posits that "the fundamental purpose of the Agreement . . . was to provide a mechanism for the parties to share excess value in the Property . . . ." *Id.* at 17. Because 1st Source did not abide by those principles, BPS continues, 1st Source's transaction was not just a breach of the Agreement but also an act of criminal fraud entitling BPS to increased damages.

[8] BPS's claims are wholly without merit and are contrary to the plain language of the Agreement. BPS plainly conveyed all its right, title, and interest in and to the property to 1st Source. And the Agreement expressly authorized 1st Source to "dispose of the Property in such manner . . . and at such time as [1st Source]

determines in its sole and absolute discretion." Appellant's App. Vol. 2 at 25. Those terms are unambiguous and in no way "limited" 1st Source's discretion in how to dispose of the property.[4] Rather, that language categorically placed "sole and absolute discretion" in the disposal of the property with 1st Source. Indeed, there is no dispute that, had 1st Source sold the property to the third party that had made the $2.9 million offer, BPS would have no claim.

[9] Moreover, the Agreement's "fundamental purpose" was not, as BPS asserts, to provide a mechanism to share "excess value" in the property. *See* Appellant's Br. at 17. The fundamental purpose of the Agreement was to settle a legal dispute between the parties by giving 1st Source exclusive control over disposition of the real estate and releasing BPS from its mortgage obligations. BPS received the benefit of its bargain. And the Agreement expressly contemplates that BPS would receive a distribution from the disposal of the property only "if any" such funds remained after various other distributions. Appellant's App. Vol. 2 at 26. That is, the plain language of the Agreement demonstrates that the parties contemplated that 1st Source might dispose of the property in such a manner and time that there would be no funds to distribute to BPS.

[10] We also reject BPS' contention that 1st Source made a "unilateral determination that BPS' rights under the Agreement were void and worthless."

---

[4] We reject BPS's assertion that the Agreement's use of the term "dispose of" requires a transaction with a third party.

Appellant's Br. at 31. The ultimate $2.9 million sale price was not, as BPS contends, based on an "internal valuation" but matched the highest third-party offer 1st Source had received. *See id.* at 31. 1st Source made a business decision that it was authorized to make under the Agreement, and in so doing 1st Source also suffered a loss, at least in the foreseeable future. Accordingly, as 1st Source acted within its clear rights under the Agreement when it sold the property to itself, 1st Source is entitled to judgment as a matter of law on BPS's claim that 1st Source breached the Agreement.

[11] For similar reasons, we also hold that 1st Source is entitled to judgment as a matter of law on BPS's criminal fraud claim. An essential element of criminal fraud is the intent to defraud. Ind. Code § 35-43-5-4(8) (2017). As 1st Source acted within its clear rights under the Agreement, we reject BPS's assertion that 1st Source acted with an intent to defraud. In sum, we affirm the trial court's grant of summary judgment to 1st Source on BPS's claims.

[12] Affirmed.

Kirsch, J., and Brown, J., concur.