## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 06 2017, 8:53 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEES |
|---|---|
| John A. Kraft | James F. Guilfoyle |
| Young, Lind, Endres & Kraft | Guilfoyle Law Office |
| New Albany, Indiana | Jeffersonville, Indiana |

I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mary Angela Bowser, Randall Bowser, Cathleen C. Perry, and Anthony P. Perry, | December 6, 2017 |
| *Appellants (Third-Party Defendants)*, | Court of Appeals Case No. 10A01-1702-CC-327 |
| v. | Appeal from the Clark Circuit Court |
| Paulette Oakes and Garland Oakes, | The Honorable Bradley Jacobs, Judge |
| *Appellees (Third-Party Plaintiffs)*. | The Honorable Kenneth Abbott, Magistrate |
| | Trial Court Cause No. 10C02-1307-CC-1077 |
| PNC Bank, N.A., | |
| *Plaintiff*, | |
| v. | |
| Click Portrait Studio, LLC, Paulette Oakes, and Garland Oakes, | |
| *Defendants*. | |

**Brown, Judge.**

[1] Cathleen C. Perry and Anthony P. Perry appeal the trial court's entry of summary judgment in favor of Paulette Oakes and Garland Oakes.[1] The Perrys raise three issues which we consolidate and restate as whether the court erred in entering summary judgment in favor of the Oakeses. We affirm.

## *Facts and Procedural History*

[2] On or about May 25, 2011, Angela and Randall Bowser and Garland Oakes, three members of the Indiana limited liability company, Click Portrait Studios, LLC, (the "LLC"), adopted and signed a resolution that states:

> WHEREAS, the members of the LLC deem it advisable and in the best interest of the Company that [Garland] Oakes withdraw from the LLC; thereby relinquishing his interest in the LLC; and
>
> WHEREAS, the members of the LLC deem it advisable and in the best interest of the Company that the members memorialize their agreement in writing;
>
> NOW, THEREFORE, BE IT:
>
> RESOLVED, that the members hereby approve and authorize the withdrawal of [Garland] Oakes as a member of the LLC; and
>
> RESOLVED FURTHER, that any interest [Garland] Oakes may have in the LLC shall terminate; and
>
> RESOLVED FURTHER, that the members have entered into a DEBT SERVICING AGREEMENT and a GUARANTY

---

[1] Third-party plaintiff Garland Oakes signed documents as "Grant Oakes." *See* Appellants' Appendix Volume 2 at 75-76; Appellants' Brief at 6 n.1.

AGREEMENT memorializing the conditions under which [Garland] Oakes is agreeing to withdraw as a member of the LLC; and

RESOLVED FURTHER, that Angela Bowser and Randall Bowser shall continue as members of the LLC, and Cathleen C. Perry and Anthony P. Perry shall become members of the LLC; and

RESOLVED FURTHER, that Angela Bowser and Randall Bowser shall amend the Operating Agreement of the LLC, subject to the terms and conditions of the DEBT SERVICING AGREEMENT and the GUARANTY AGREEMENT; and

RESOLVED FURTHER, that all acts and deeds heretofore performed by the members of the LLC in carrying out the terms and intentions of these resolutions, are hereby ratified, approved and confirmed.

Appellants' Appendix Volume 2 at 75.

[3] On or about the same day, Garland Oakes, the Bowsers, and the Perrys signed an instrument prepared by Rachele L. Cummins, titled "Guaranty Agreement," which provides:

THIS AGREEMENT . . . by Angela Bowser, Randall Bowser, Cathleen C. Perry, and Anthony P. Perry, (hereinafter collectively referred to as "Guarantors") in favor of [Garland] Oakes (and/or Paulette Oakes, his spouse, as her name may appear) (hereinafter referred to as "Oakes"),

WHEREAS, Guarantors are the current Members of the Indiana limited liability company known as Click Portrait Studio, LLC (hereinafter referred to as "LLC"); and

WHEREAS, Oakes was a former member of the LLC but has resigned; and

WHEREAS, contemporaneously with the execution of this Guaranty Agreement, the parties are entering and executing a "Debt Servicing Agreement" which is attached hereto and made a part hereof, as if totally set out; and

WHEREAS, the parties desire to memorialize their Guaranty Agreement,

THEREFORE, for and in consideration of the mutual promises and covenants existing herein, the parties acknowledge and agree as follows:

The Guarantors do hereby jointly and severally, guaranty absolutely, irrevocably, personally, and unconditionally Oakes the due and punctual payment of all installments of principal and interest now or in the future due on the debts until the debts are paid in full.

*Id.* at 77.

[4]     On or about the same day, the same parties entered into a second instrument prepared by Cummins, titled "Debt Servicing Agreement," which provides:

THIS AGREEMENT . . . by and between Click Portrait Studio, LLC (hereinafter referred to as the "LLC") and [Garland] Oakes (hereinafter referred to as "Oakes").

WHEREAS, Oakes has elected to withdraw his membership interest in the LLC; and

WHEREAS there are certain debts owed by the LLC that may be in Oakes [sic] name individually or jointly with his spouse and/or Oakes may have personally guaranteed; and

WHEREAS the LLC and its remaining members are not able to refinance the debt to remove Oakes [sic] name; and

WHEREAS OAKES agrees to allow his name to remain on the debt and his property pledged as collateral provided that the LLC and its individual members, jointly and severally, pay, indemnify and hold him harmless from said debt and, in addition thereto, pay $45,000 for debt servicing; and

WHEREAS, the parties desire to memorialize their Agreement,

THEREFORE, for and in consideration of the mutual promises and covenants existing herein, the parties acknowledge and agree as follows:

1. The Parties agree that the following debts of the LLC may be in the name of Oakes individually or jointly with his spouse or guaranteed by Oakes but shall remain the sole and separate obligation of the LLC and its individual members, jointly and severally:

   i. PNC credit card with an approximate balance of $18,340

   ii. US Bank credit card with an approximate balance of $11,105

   iii. First Savings Bank with an approximate balance of $73,823

   iv. PNC bank loan with an approximate balance of $178,475

2. The LLC and its individual members, jointly and severally, shall pay, indemnify and hold [Garland] Oakes and his spouse harmless on the indebtedness listed in paragraph 1 above from and against any and all losses, liabilities, damages, costs and expenses, including all legal fees and expenses that he may incur as a result of failure to pay said indebtedness. In

addition, should any regular and scheduled payment on any of the debts listed in paragraph 1 above be paid late or paid untimely for any reason whatsoever, Oaks [sic] shall be entitled to additional liquidated damages in the amount of Thirty Dollars ($30.00) for each day said payment is lae [sic] or untimely. Oakes' remedies for late or non-payment shall be cumulative and may be enforced at law or in equity.

3. The LLC and/or its individual members, jointly and severally shall pay to Oakes the total sum of $45,000, payable in 3 installments of $15,000 each due and payable on the following dates: immediately upon execution of this agreement; June 1, 2012; and June 1, 2013.

*Id.* at 79-80.

[5] The Perrys and the Bowsers signed a Purchase Agreement of Membership Interest on December 13, 2012, providing:

1. Angela Bowser and Randall Bowser shall transfer their respective membership interest in the [LLC] to Cathleen C. Perry.

\* \* \* \* \*

5. That Cathleen C. Perry, on behalf of the [LLC], assumes the current outstanding obligations of the [LLC], including, but not limited to the indebtedness thereunder.

6. The Parties agree to indemnify and hold harmless each other with respect to any and all issues resulting from their ownership of their respective membership interest in the [LLC].

*Id.* at 111-112.

[6] On July 23, 2013, PNC Bank, N.A. ("PNC") filed a complaint against the LLC and the Oakeses, which states in part that, on or about May 15, 2007, the LLC, as the borrower, "executed and delivered a Promissory Note in favor of PNC in the amount of Three hundred Thousand Six Hundred and 00/100 Dollars ($317,600.00),"[2] which was due and payable in full by its terms, that the Oakeses as guarantors "absolutely and unconditionally guaranteed the obligations of [the LLC] to PNC by virtue of their Commercial Guaranties," and that the LLC "executed and delivered a Commercial Security Agreement." *Id.* at 34. The complaint also states that, as of January 8, 2013, the "principal sum of $121,660.97, accrued interest of $4,249.45, late charges in the amount of $2,328.60, plus per diem interest that continues to accrue, costs and attorney fees to be determined at judgment" is due on the note. *Id.*

[7] On September 19, 2013, the Oakeses filed an answer and a third-party complaint against the Bowsers and the Perrys which alleging in part:

> 11. On or about May 25, 2011, [the Bowsers and the Perrys] became the members of [the LLC]. Defendant [Garland] Oakes withdrew from the LLC. See Exhibit 2.
>
> 12. On or about May 25, 2011, third party defendants, [agreed] jointly and severally, to pay, indemnify and hold the [Oakeses]

---

[2] The original PNC complaint included an attached exhibit containing the original promissory note and the pair of unconditional guarantee agreements, which state in part that the note is "dated 5-15-07 in the principal amount of Three Hundred Seventeen Thousand Six Hundred & 00/100 Dollars." Appellants' Appendix Volume 2 at 40. **(Appellants' App. Vol. 2 at 33-51)**

harmless on the debt which forms the basis of the complaint. See Exhibits 3 ("Guaranty Agreement") and 4 ("Debt Servicing Agreement").

13. Additionally, third party defendants, jointly and severally, agreed to pay any losses, liabilities, damages, costs, expenses, and legal fees for the failure to pay said debt. See Exhibit 4.

* * * * *

15. In the event PNC recovers judgment against the [Oakeses] on its complaint, third party defendants are liable to the [Oakeses] in a like amount, and are also liable for costs, expenses, fees and liquidated damages.

*Id.* at 53-54. On October 10, 2013, PNC subsequently amended its complaint to reflect the new third-party claim. Summary judgment was granted on the amended complaint in favor of PNC against the Oakeses and the LLC on December 26, 2014.

[8] On November 24, 2015, the Oakeses filed a motion for summary judgment against the Perrys as third-party defendants. In their supporting memorandum, the Oakeses argued that on or about May 25, 2011, the Perrys "assumed the obligations of [the LLC], as well as the obligations associated with the [Oakeses] involvement in the business. The Perrys promised and pledged their willingness to hold the [Oakeses] harmless on these debts," and that the Perrys

> assented to the terms of an indemnification agreement wherein they promised due and punctual payments would be made on behalf of the [Oakeses]. The payments were not made, and these documents, taken together, remove all doubt as to whether a factual dispute can exist regarding indemnity liability. The

Perrys signed the agreements, signatures which they do not deny, and now must be held to the terms of those agreements.

*Id.* at 122.

[9] In their response to the motion for summary judgment, the Perrys designated as evidence the Purchase Agreement of Membership Interest, the Affidavit of Cathleen C. Perry, and the opinion of the Indiana Supreme Court case, *In re Indiana State Fair Litig.*, 49 N.E.3d 545 (Ind. 2016), as well as the May 25, 2011, Resolutions of the Members, and Guaranty and Debt Servicing Agreements.

The Affidavit of Cathleen C. Perry, signed and dated January 28, 2016, states:

1. . . . I am an owner of [the LLC].

2. I, along with Anthony P. Perry, purchased a membership interest in [the LLC] on December 13, 2012.

3. Before purchasing the membership interest, I communicated with PNC regarding the debt of [the LLC].

4. During these conversations, PNC knew that some of [the LLC's] assets had been misappropriated at a time before I purchased my membership interest.

5. During these conversations, PNC knew that unauthorized distributions of [the LLC's] capital had been made at a time before I purchased my membership interest.

6. PNC never disclosed to me nor Anthony that any misappropriation or unauthorized distribution had occurred.

7. I asked PNC about [the LLC's] financial background. PNC would not disclose financial details because to do so would violate their confidentiality rules.

8.  I executed the Purchase Agreement to become owner of [the LLC].

9.  Solely, in my capacity as owner of [the LLC], I assumed financial responsibility for outstanding obligations of [the LLC].

10.  Garland Oakes had entered into a debt servicing agreement with [the LLC] on May 25, 2011.

11.  Upon his departure, Garland Oakes wanted to be released from certain debt he had taken on as a member, but could not have his name removed.

12.  Garland Oakes agreed to stay on the debt servicing agreement only if all of the four (4) members of Click assumed this specific debt.

\* \* \* \* \*

15.  The Purchase Agreement did not cover the familial debt and any personal obligation to pay.

\* \* \* \* \*

17.  Any notes and/or other debts executed prior to my tenure as an owner were executed by [the LLC] in its business capacity, not by any individual members in their personal capacities.

18.  I have never changed limited liability status of [the LLC].

19.  [The LLC] was dissolved in 2013 and has not been reinstated.

*Id.* at 143-144.

[10]   In their response, the Perrys also argued that "misappropriations and unauthorized distributions had occurred, unbeknownst to [the Perrys] upon

execution," and that the LLC "should only be deemed responsible for any debts related to the photography business. It should not be held accountable for non-business debts to which its members, [the Perrys], were not aware." *Id.* at 139.

[11] An entry in the chronological case summary dated April 25, 2016, states in part, "[a]fter having taken this matter under advisement, the Court finds as follows: . . . The Court grants Third Party Plaintiff's (Oakes) Motion for Summary judgment against Third Party Defendant (Perry)." *Id.* at 18. The trial court entered a first amended order granting summary judgment on August 30, 2016, and a second amended order on January 20, 2017, which granted the Perrys' motion for certification for interlocutory appeal.

## *Discussion*

[12] The issue is whether the trial court erred in entering summary judgment in favor of the Oakeses. We review an order for summary judgment de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Our review of a summary judgment motion is limited to those materials designated to the trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. *Catt v. Bd. of Comm'rs of Knox Cnty.*, 779 N.E.2d 1, 3 (Ind. 2002). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving

party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.*

The Perrys contend on appeal that the Oakeses did not demonstrate that there were no genuine issues of material fact, that "contracts for indemnification are construed strictly and, in this case, as it was for past wrongdoings, the Perrys cannot be held to have assumed those damages unless they knowingly and willingly did so," and that "there was no agreement between the [Oakeses] and the Perrys that the Perrys would assume non-[LLC] debt or any debts that occurred due to embezzlement, conversion, deceit, or other wrongdoing." Appellants' Brief at 9. They also argue that the Oakeses "failed to disclose certain loan defaults to the Perrys," that this failure of the meeting of the minds necessitates a finding of failure to form a binding contract, and that the Debt Servicing Agreement and the Guaranty Agreement were "vague and unspecific and did not illustrate the previously incurred debt of which the [Oakeses] were attempting to transfer their liability." Appellants' Reply Brief at 12-13.

The Oakeses contend that summary judgment entered on the "attempt to recover under the indemnity agreement related to the sale of their small business was proper," that the dispute "involves whether a fraud occurred as alleged by the Perrys, and if it did, whether the Perrys should have plead those facts with specificity," and that, because the Indiana Rules of Trial Procedure

"require specificity when dealing with averments of fraud," the "failure to comply therewith" should control in this case.[3]  Appellees' Brief at 11-12.

[15]  The construction of a contract is particularly well-suited for de novo appellate review because it generally presents questions purely of law.  *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577 (Ind. 2013) (citing *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997)).  A contract may be construed on summary judgment "if it 'is not ambiguous or uncertain,' or if 'the contract ambiguity, if one exists, can be resolved without the aid of a factual determination.'"  *In re Indiana State Fair Litig.*, 49 N.E.3d 545, 548 (Ind. 2016) (quoting *Warrick County ex rel. Conner v. Hill*, 973 N.E.2d 1138, 1144 (Ind. Ct. App. 2012), *trans. denied*).  The meaning of a contract is a question for the factfinder, precluding summary judgment, only where interpreting an ambiguity requires extrinsic evidence.  *Id.* (citing *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992)).

[16]  A contract is not ambiguous merely because the parties disagree as to its proper construction.  *Ethyl Corp. v. Forcum-Lannom Assocs., Inc.*, 433 N.E.2d 1214, 1218 (Ind. Ct. App. 1982).  When this court interprets an unambiguous contract, we must give effect to the intentions of the parties as expressed in the four corners of the instrument.  *Id.*; *Collins v. McKinney*, 871 N.E.2d 363, 372 (Ind. Ct. App. 2007).  Clear, plain, and unambiguous terms are conclusive of that intent.  *Fetz*

---

[3] In response to the Oakeses' brief, the Perrys filed a motion to strike on May 19, 2017.  By separate order we deny the motion.

*v. Phillips*, 591 N.E.2d 644, 647 (Ind. Ct. App. 1992). We will not construe clear and unambiguous provisions, nor will we add provisions not agreed upon by the parties. *Id.* (citing *Wilson v. Elliott*, 589 N.E.2d 259, 264 (Ind. Ct. App. 1992)). In interpreting an agreement, we are under an obligation to read the agreement in a manner which harmonizes its provisions as a whole and to give effect to the parties' expressed intent. *Kelly v. Smith*, 611 N.E.2d 118, 121 (Ind. 1993); *see also Trustees of Ind. Univ. v. Cohen*, 910 N.E.2d 251, 257-260 (Ind. Ct. App. 2009).

[17] The designated evidence reveals that the Perrys became members of the LLC on or about May 25, 2011, by way of a resolution signed by three of its then-current members. The Perrys signed a document on or about the same day, titled "Guaranty Agreement," which references the "Debt Servicing Agreement" and states that Garland Oakes was a former member of the LLC and that the Perrys and the Bowsers "jointly and severally, guaranty absolutely, irrevocably, personally, and unconditionally . . . the due and punctual payment of all installments of principal and interest now or in the future due on the debts until the debts are paid in full." Appellants' Appendix Volume 2 at 77. The Perrys also signed the Debt Servicing Agreement, which states that "certain debts owed by the LLC" may have been "personally guaranteed" by the Oakeses, that Garland Oakes allowed his name to remain on the debt "provided that the LLC and its individual members, jointly and severally, pay, indemnify and hold him harmless from said debt," and that the debts, including the "PNC bank loan with an approximate balance of $178,475," which may

have been "in the names of [Garland] Oakes individually or jointly with his spouse or guaranteed by Oakes," shall remain "the sole and separate obligation of the LLC and its individual members, jointly and severally." *Id.* at 79. The agreement also contains a second paragraph that states the LLC and its individual members, "jointly and severally," shall "pay, indemnify and hold [Garland] Oakes and his spouse harmless on the indebtedness listed [above] from and against any and all losses, liabilities, damages, costs and expenses, including all legal fees and expenses that he may incur as a result of failure to pay said indebtedness." *Id.* at 79-80. Given the clear, plain, and unambiguous recitation of the rights and responsibilities of the parties, we will not read the agreements in a manner inconsistent with the intent as unambiguously expressed by the language in the agreements. *See Ethyl Corp.*, 433 N.E.2d at 1218. We cannot say that the trial court erred in granting summary judgment in favor of the Oakeses based on the agreements as set forth above and in the record.

[18] To the extent that the Perrys assert that a material issue of fact exists regarding their defense of fraud and that they did not agree to guarantee non-LLC debt, we observe that Cathleen Perry's affidavit relates primarily to PNC's knowledge and failure to disclose that any misappropriation or unauthorized distribution had occurred. Construing the agreements together, we conclude there is not a genuine issue of material fact as to the debt guaranteed by the Perrys or their fraud defense. *See Kruse v. Nat'l Bank of Indianapolis*, 815 N.E.2d 137, 144 (Ind. Ct. App. 2004) (observing that the appellant argued that ambiguities existed as

to what debt he had guaranteed, that in construing the guarantee the court would give effect to the intentions of the parties as ascertained from the language of the contract in light of the surrounding circumstances, and that it was clear from the face of a loan agreement and a guaranty signed by the appellant that he had agreed to act as a guarantor of certain indebtedness, and rejecting the claim by the appellant that there was a genuine issue of material fact as to what debt he guaranteed).

## *Conclusion*

For the foregoing reasons, we affirm the entry of summary judgment in favor of the Oakeses and against the Perrys.

Affirmed.

May, J., and Pyle, J., concur.