

I N  T H E

# Court of Appeals of Indiana



FILED

Dec 16 2025, 9:28 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

Garrett Norman,

*Appellant-Plaintiff*

v.

HNTB Corporation, HNTB Indiana, Inc., CDM Smith Inc.,
Rieth-Riley Construction Co., Inc., Roadsafe Traffic Systems,
Inc., Indianapolis Public Transportation Corporation, the City
of Indianapolis, Shrewsberry & Associates, LLC, and American
Structurepoint, Inc.,

*Appellees-Defendants*

---

December 16, 2025

Court of Appeals Case No.
25A-CT-185

Appeal from the Marion Superior Court

The Honorable John M.T. Chavis, II, Judge

Trial Court Cause No.
49D05-2105-CT-16053

**Vaidik, Judge.**

## Case Summary

During construction of the Red Line bus route in Indianapolis, motorcyclist Garrett Norman collided with Victoria Gaston's car when Gaston turned left at an intersection where left turns were newly prohibited. Norman was dragged under Gaston's vehicle and suffered extensive injuries. He brought a negligence action against multiple entities involved in the construction, alleging that the pavement markings and traffic-control devices along the Red Line were inadequate and created an unsafe roadway for motorists. In her deposition, Gaston gave conflicting testimony about whether she made the left turn knowing that turning left was prohibited at that intersection. Relying on only certain portions of Gaston's deposition testimony, the trial court granted summary judgment for the defendants.

Norman now appeals, arguing that the conflicts in Gaston's deposition testimony create genuine issues of material fact precluding summary judgment. We agree. The rule prohibiting a party from using its own contradictory testimony to create an issue of fact to defeat summary judgment does not apply to conflicting statements by a non-party witness made within the same deposition. We therefore reverse and remand for further proceedings.

## Facts and Procedural History

In the summer of 2019, construction was wrapping up on the Red Line, Indianapolis's first bus rapid-transit line. The northernmost part of the Red Line was to be on North College Avenue, stretching from 38th Street to 66th Street. As part of the Red Line design, College Avenue was converted from three northbound lanes and two southbound lanes to one traffic lane in each direction and a center lane for buses only. Because of the bus lane in the center of the road, turning left off of College became prohibited at many intersections where left turns had previously been allowed, including the intersection of College and 60th Street. Several traffic-control devices were installed to prevent left turns at these intersections: a solid yellow line on each side of the bus lane, a rubber median down the middle of the bus lane, triangle-shaped concrete islands with metal posts in the middle where the side streets meet College, and no-left-turn signs at the far-left corners of the intersections.

On the night of July 23, Norman was driving his motorcycle south on College Avenue. He came to a stop at a red light at the intersection of College and 61st Street. After the light turned green, Norman was beginning to accelerate when Gaston used the left-turn-only lane to pass him in her car. Gaston then moved in front of Norman, and as they continued down College, she braked several times. When Gaston came to the intersection of College and 60th Street (which doesn't have a stoplight or a stop sign on College) she slammed on her brakes. Norman swerved to the left to avoid a collision, but then Gaston began turning left onto 60th Street. Norman "laid the motorcycle down" and rolled off of it

"[a]s an evasive maneuver," but his body rolled in front of Gaston's car, and she ran over him as she was making the left turn. Appellant's Br. p. 13. Norman's helmet lodged between the underside of Gaston's car and the pavement, and he was dragged under the car as Gaston continued driving onto 60th Street. Norman survived but sustained extensive injuries.

[5] In 2021, Norman brought a negligence action against multiple parties involved in the construction of the Red Line: HNTB Corporation, HNTB Indiana, Inc., Rieth-Riley Construction Co., Inc., CDM Smith Inc., Roadsafe Traffic Systems, Inc., the City of Indianapolis, Indianapolis Public Transportation Corporation, Shrewsberry & Associates, LLC, and American Structurepoint, Inc. Norman alleged that the defendants failed to provide a reasonably safe roadway through the Red Line construction and to "reasonably inspect the pavement marking and traffic control devices for motorists along the Red Line." Appellant's App. Vol. 2 p. 59. Norman didn't name Gaston as a party to the suit, but in its answer to Norman's complaint, Rieth-Riley "nam[ed] Gaston as a non-party responsible for Norman's claimed personal injuries." Appellees' Br. p. 6.[1]

[6] The parties engaged in discovery over the next few years. In January 2024, Norman took Gaston's deposition. While questioning Gaston about her driving

---

[1] After the accident, Gaston was taken to a nearby hospital for a blood draw and was found to have THC and its metabolite in her blood. In August 2023, Gaston pled guilty to Level 5 felony causing serious bodily injury when operating a vehicle with a controlled substance in her blood. *See* Cause No. 49D20-2003-CM-10125.

on the night of the accident, Norman's counsel asked, "Before that evening, did you ever even notice that sign that says 'No Left Turn'? Had you ever noticed that before?" Appellant's App. Vol. 3 pp. 84-85. Gaston answered, "No." *Id.* at 85. When counsel showed Gaston a photo of the 60th & College intersection at the time of the accident, Gaston identified the measures to prevent left turns shown in the photo but testified that she didn't know she couldn't turn left there:

> Q. Okay. And this is the intersection where you attempted to turn left and there was -- the accident occurred. Do you see that sign on the corner there?
>
> A. Yes.
>
> Q. What does that sign say?
>
> A. "No Turn."
>
> Q. "No Left Turn"?
>
> . . . .
>
> A. Yes.
>
> Q. And there's also a little island, concrete island there, and there's a post there. Do you remember seeing that?
>
> A. Yes.
>
> Q. That was there before the accident, too, wasn't it?

A. Yes.

Q. But it's your testimony you weren't familiar with the fact that this -- you couldn't turn left at this intersection. Am I right about that?

A. Yes.

Appellant's App. Vol. 2 pp. 133-34. As the deposition went on, Gaston maintained that she didn't see the no-left-turn sign but testified that even if she had seen it, she didn't think that would've stopped her from turning left:

Q. Is it your understanding that it's okay to drive over a solid yellow line?

A. No. It's not okay.

Q. But you did it anyway?

A. Yes.

. . . .

Q. The sign that said "No Left Turn," I think it's your testimony that you didn't notice that before the evening of the accident; is that true?

A. No. No, I didn't.

Q. You had not noticed --

A. I did not notice it.

Q. You would agree that if you had noticed it, then you would've been aware that left turn is prohibited there; right?

A. Yes. But, like I said, people turn over there. The Red Line wasn't stopping nothing, it seemed like, to people. It was getting built, but it was -- it was not stopping a lot of people, I'm pretty sure. It's not just going off of me.

Q. So if the solid yellow line didn't stop you from turning, do you think seeing the "No Left Turn" sign would've stopped you from turning left?

A. No.

*Id.* at 135-36. Shortly after that line of questioning, counsel for American Structurepoint asked, "And just to confirm the questioning from counsel, the night of the accident, right before you made the left-hand turn, you understood that you were not supposed to make a left-hand turn at 60th Street; is that correct?" *Id.* at 137-38. Gaston answered, "Yes." *Id.* at 138. Later still, Gaston contradicted her earlier testimony that she didn't think seeing the no-left-turn sign would've stopped her from turning left:

Q. So if you saw the -- so you didn't see the "No Left Turn" sign, though, correct, the night of?

A. I don't remember no left turn sign being right there, and the police said there wasn't no sign up.

Q. If you had s[een] a "No Left Turn" sign, would you have turned left?

A. No, I wouldn't.

Q. But you previously testified that there was a sign at the scene; correct?

A. I didn't recall seeing no sign. . . .

Appellant's App. Vol. 3 p. 87.

[7] Rieth-Riley moved for summary judgment, arguing that it wasn't a proximate cause of Norman's injuries because Gaston turned left at the 60th & College intersection despite knowing it was prohibited and "intended to make an improper turn all along." Appellant's App. Vol. 2 pp. 75-76. In support of its motion, Rieth-Riley designated, among other evidence, Gaston's deposition testimony that she knew she wasn't supposed to make a left turn at that intersection, she knew the concrete island was intended to prevent left turns, she drove over the solid yellow line despite knowing that's not allowed, and she would've turned left even if she'd seen the no-left-turn sign.

[8] In his opposition to Rieth-Riley's motion, Norman argued, in relevant part, that summary judgment was improper because material facts were in dispute, designating Gaston's deposition testimony that she wasn't aware that she couldn't turn left at that intersection and that she wouldn't have turned left if she'd seen the no-left-turn sign. Norman also designated as evidence the

affidavit of engineer Fred Hanscom, who explained that the no-left-turn sign, which was placed on the far-left side of the intersection, was "too far in a driver's periphery to communicate the no-left-turn message." Appellant's App. Vol. 3 p. 56. He also noted that the designated bus lane extending through the intersection with a solid yellow line on each side "was an unfamiliar traffic control configuration, which is inevitably a source of driver confusion" and "divert[ed] attention" from the no-left-turn sign. *Id.* at 55, 66. Hanscom opined that these ineffective traffic-control devices at the intersection created a dangerous condition, which significantly contributed to the crash.

[9] The trial court granted summary judgment for Rieth-Riley, finding:

> Gaston was familiar with the intersection where the crash occurred and she knew it was illegal to turn left there. Gaston knew that the concrete island was intended to discourage people from making left turns but she did so anyway. Gaston testified that she would not have stopped from turning left even if she saw a "No Left Turn" sign at the intersection where the crash occurred. Gaston's actions were an intervening, superseding cause that broke the causal connection between Rieth-Riley and Norman.

*Id.* at 48. The remaining defendants subsequently moved for summary judgment, contending that the court's conclusion that Gaston was an intervening, superseding cause was dispositive of Norman's allegations against them. Later, the court granted summary judgment for the remaining defendants.

[10] Norman now appeals.

## Discussion and Decision

[11] Norman argues that the trial court erred in granting Rieth-Riley's motion for summary judgment and in later granting summary judgment for the remaining defendants. We review a motion for summary judgment de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). That is, "The judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). The court must view the evidence in the light most favorable to the nonmovant and may not weigh the evidence or judge witness credibility—that assignment is reserved for the jury. *Cave Quarries, Inc. v. Warex LLC*, 240 N.E.3d 681, 685 (Ind. 2024).

[12] A party moving for summary judgment bears the initial burden of "demonstrat[ing] the absence of any genuine issue of fact as to a determinative issue." *Hughley*, 15 N.E.3d at 1003. The burden then shifts to the nonmovant to "come forward with contrary evidence showing an issue for the trier of fact." *Id.* (quotation omitted). On appeal from the grant of summary judgment, the nonmovant has the burden of showing that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Kramer v. Cath. Charities of Diocese of Fort Wayne-South Bend, Inc.*, 32 N.E.3d 227, 231 (Ind. 2015). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if

the undisputed material facts support conflicting reasonable inferences." *Hughley*, 15 N.E.3d at 1003.

[13] In negligence cases such as this, summary judgment is rarely appropriate because issues of contributory negligence, causation, and reasonable care are more appropriately left for the trier of fact. *Lyons v. Richmond Cmty. School Corp.*, 19 N.E.3d 254, 261 (Ind. 2014). "Nonetheless, summary judgment is appropriate when the undisputed material evidence negates one element of a negligence claim." *Kramer*, 32 N.E.3d at 231. The elements of a negligence claim are (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) injury to the plaintiff caused by the defendant's breach. *Id.*

[14] At issue here is the causation element of Norman's negligence claim. To negate this element, Rieth-Riley designated in support of its summary-judgment motion Gaston's deposition testimony that she would've turned left at 60th & College even if she'd seen the no-left-turn sign and that she knew she wasn't supposed to make a left turn at that intersection, the concrete island was intended to prevent left turns, and driving over a solid yellow line isn't allowed. But as Norman highlights, other portions of Gaston's deposition—which Norman designated as evidence in opposition to Rieth-Riley's motion—directly contradict this testimony. Gaston testified that she "w[as]n't familiar with the fact that [she] couldn't turn left at [the 60th & College] intersection" and that she didn't see the no-left-turn sign before the accident or that night. And although she testified that since "the solid yellow line didn't stop [her] from

turning, [she didn't] think seeing the 'No Left Turn' sign would've stopped [her]," she later said that if she'd seen the sign, she wouldn't have turned left.

[15] The defendants acknowledge the contradictions in Gaston's deposition testimony but maintain that these contradictions don't create a genuine issue of material fact. They cite *Dyer v. Hall*, 928 N.E.2d 273 (Ind. Ct. App. 2010), *trans. denied*, and *Miller v. Martig*, 754 N.E.2d 41 (Ind. Ct. App. 2001), for the proposition that "[g]enerally, a genuine issue of material fact is not created through a witness's own inconsistent testimony." Appellees' Br. p. 22. It is true that a nonmovant cannot use contradictory testimony in their own affidavit to create an issue of fact to defeat summary judgment, *see Shorewood Forest Utils., Inc. v. Welsh*, 237 N.E.3d 1142, 1148 (Ind. Ct. App. 2024), but this rule doesn't apply to the inconsistencies in Gaston's deposition testimony. As our Court has explained, "the stated purpose for this rule is to prevent *a party* from generating its own genuine issue of material fact by providing self-serving contradictory statements without explanation." *M.S.D. of Martinsville v. Jackson*, 9 N.E.3d 230, 245 (Ind. Ct. App. 2014) (quotation omitted), *trans. denied*. Indeed, if a party "could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Shorewood*, 237 N.E.3d at 1148.

[16] But the risk of "sham issues of fact" is not present here. Unlike the cases on which the defendants rely, this is not a case where a witness said one thing in a sworn statement and then contradicted themselves in a later sworn statement.

And unlike many of the cases in which we've applied this rule, this is not an instance where a witness stated one thing in their deposition and then later made a contradictory statement in an affidavit designated in opposition to a summary-judgment motion. *See, e.g.*, *Shorewood*, 237 N.E.3d at 1148-49; *Crawfordsville Square, LLC v. Monroe Guar. Ins. Co.*, 906 N.E.2d 934, 939 (Ind. Ct. App. 2009), *trans. denied*. Rather, the conflicts in Gaston's testimony occurred within a single deposition, which was taken before Rieth-Riley moved for summary judgment and after Gaston was criminally convicted for her role in the accident. Additionally, as a non-party witness, Gaston did not have the self-interest of a party trying to defeat summary judgment. Contradictory statements of a non-party witness during a single deposition may be used to create issues of fact in a summary-judgment proceeding.[2]

[17]  Of course, the presence of disputed facts does not automatically preclude summary judgment. "[D]espite conflicting facts and inferences on some elements of a claim, summary judgment may be proper where there is no dispute or conflict regarding a fact that is dispositive of the claim." *Bushong v. Williamson*, 790 N.E.2d 467, 474 (Ind. 2003). But whether Gaston knew she couldn't turn left at the 60th & College intersection, saw the no-left-turn sign on the night of the accident, and would've turned left even if she had seen the sign are dispositive of Norman's claim. Indeed, the sole basis of the court's grant of

---

[2] Because the issue is not before us today, we save for another time whether contradictory statements made by a party during a single deposition (or other sworn statement) may be used to create issues of fact to defeat summary judgment.

summary judgment to Rieth-Riley was its conclusion that Gaston's actions broke the causal connection between Rieth-Riley and Norman, which was based on Gaston's testimony that she knew left turns were prohibited at the intersection and would've turned left even if she saw the no-left-turn sign. By designating Gaston's testimony to the contrary, Norman met his burden of raising a genuine issue of material fact. *Cf. Larch v. Larch*, 564 N.E.2d 313, 316 (Ind. Ct. App. 1990) (holding that discrepancies in non-party witness's deposition testimony didn't create issues of fact precluding summary judgment because "the discrepancies . . . all ha[d] to do with collateral issues").

[18] Despite Norman designating this contrary evidence, the trial court relied only on the portions of Gaston's testimony designated by Rieth-Riley to reach its conclusion that Gaston was an intervening, superseding cause. *See* Appellant's App. Vol. 2 pp. 48, 53. In doing so, the court impermissibly weighed Gaston's testimony and decided which of her statements to believe. This was improper at the summary-judgment stage. "By definition, cases that hinge upon disputed facts are inappropriate for summary judgment, because weighing evidence—no matter how decisively the scales may seem to tip—is a matter for trial, not summary judgment." *In re Ind. State Fair Litig.*, 49 N.E.3d 545, 548 (Ind. 2016) (quotation omitted). Rather than resolving the conflicts in Gaston's testimony itself, the trial court should've left it to the jury to determine which of Gaston's statements to credit. Because this improper credibility determination was the basis of the court's decision, the court erred in granting Rieth-Riley's summary-judgment motion.

Likewise, the only ground for the court's grant of summary judgment for the remaining defendants was its conclusion that Gaston was an intervening, superseding cause. But since the court reached this conclusion by erroneously weighing Gaston's testimony, it also erred in granting summary judgment to the remaining defendants. We therefore reverse the trial court's entry of summary judgment and remand for further proceedings.[3]

Reversed and remanded.

Tavitas, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

Scott A. Faultless
Craig Kelley & Faultless LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE RIETH-RILEY CONSTRUCTION CO., INC.

Jerry E. Huelat
Huelat Law P.C.
LaPorte, Indiana

---

[3] While its motion for summary judgment was pending, Rieth-Riley also moved to strike certain evidence that Norman designated in opposition. The court granted the motion to strike on the same day it granted summary judgment for Rieth-Riley. On appeal, Norman also challenges the trial court's grant of the motion to strike. But because Gaston's conflicting deposition testimony alone—even without the stricken evidence—sufficiently established genuine issues of material fact to preclude summary judgment, we do not consider whether the court erred in granting the motion to strike.

ATTORNEYS FOR APPELLEES HNTB CORPORATION AND HNTB INDIANA, INC.

Crystal G. Rowe
Jacob W. Zigenfus
Kightlinger & Gray, LLP
New Albany, Indiana

ATTORNEYS FOR APPELLEE CDM SMITH INC.

Mary Jo Wedding
Katelyn Juerling
Peter A. Schroeder
Norris Choplin Schroeder LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE ROADSAFE TRAFFIC SYSTEMS, INC.

T. Allon Renfro
Swanson, Martin, & Bell LLP
Chicago, Illinois

ATTORNEYS FOR APPELLEES THE CITY OF INDIANAPOLIS AND INDIANAPOLIS PUBLIC TRANSPORTATION CORPORATION

James P. Strenski
Anna M. Mallon
Drewry Simmons Vornehm, LLP
Carmel, Indiana

ATTORNEY FOR APPELLEE SHREWSBERRY & ASSOCIATES, LLC

Logan C. Hughes
Reminger Co., L.P.A.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE AMERICAN STRUCTUREPOINT, INC.

Robert D. Emmerson
Michael D. Heavilon
Nicholas C. Nizamoff
DeFur Voran
Fishers, Indiana